| | |
|---|---|
| 100 | 397 |
| 109 | 184 |
| 100 | 397 |
| 117 | 545 |
| 100 | 397 |
| 130 | 72 |
| 100 | 397 |
| 71a | 230 |
| 100 | 397 |
| 149 | 475 |
| 77a | 303 |
| 100 | 397 |
| 81a | 685 |
| 100 | 397 |
| 86a | 8 |
| 100 | 397 |
| 99a | 2587 |

COTTRILL, *Appellant*, v. KRUM.

1. **Practice**: INSTRUCTIONS: DEFINING WORDS AND PHRASES. It is not necessary to explain to the jury the meaning of ordinary words and phrases, *e. g.,* "by diligent inquiry," when used in instructions in their usual and conventional sense.

2. **False Representations**: INSTRUCTIONS. In an action for false representations, charged to have been made by defendant, as to the value of corporate stock exchanged for real estate, it is error to instruct the jury that if plaintiff, by diligent inquiry, might have ascertained the falsity of the alleged representations, and failed to investigate the same, then he could not recover.

3. ———: WAIVER. Nor does the plaintiff waive his right to sue for damages in such case because, after obtaining the stock, and before suit, he offered the stock for sale at par, nor because of a delay of four or five months in bringing the suit.

4. **Practice in Supreme Court**: MISDIRECTION OF JURY. The supreme court will not affirm a judgment on the ground that it is for the right party where there has been a substantial misdirection of the jury upon a matter of law, and, but for which, a different verdict might have been rendered.

( 397 )

*Appeal from. St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

*C. H. Krum* for appellant.

(1) The court erred in giving the instruction quoted in the foregoing abstract. (*a*) It is merely an abstract proposition of law and does not define or explain to the jury what meaning the law gives to the expression "diligent inquiry." It falls within that class of instructions which has always been condemned by our courts. *Fugate v. Carter*, 6 Mo. 267; *Morgan v. Durfee*, 69 Mo. 469; *Kendig v. Railroad*, 79 Mo. 207; *Hudson v. Railroad*, 53 Mo. 525; *Dyer v. Brannock*, 2 Mo. App. 432; *Wiser v. Chesley*, 53 Mo. 547; *Boogher v. Neece*, 75 Mo. 383; *Atteberry v. Powell*, 29 Mo. 429; *Anderson v. McPike*, 86 Mo. 293; *Yarnall v. Railroad*, 75 Mo. 575; *Digby v. Ins. Co.*, 3 Mo. App. 603. (*b*) It misconceives the law of sales rendered voidable by false representations. *Mead v. Bunn*, 32 N. Y. 275; *Smith v. Countryman*, 30 N. Y. 655. (*c*) It assumes that the parties are in a position of equality as to means of knowledge, and utterly ignores the fact that respondent was the originator and manager of the corporation whose stock he was selling, while appellant was in no way connected with such corporation. *Wannell v. Kem*, 57 Mo. 478. (*d*) The decisions in this state, upon which, apparently, it is based, have been rendered in proceedings to rescind sales of realty, and have been uniformly limited to such transactions. *McFarland v. Carver*, 34 Mo. 195; *Holland v. Dudevon*, 38 Mo. 56; *Bryan v. Hitchcock*, 43 Mo. 527; *Laughton v. Green*, 49 Mo. 363. "We doubt if it is equity to allow a sharper to insist on a fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquiries. We do not understand the decisions of the court to have gone so far. It will be seen

that most of them have been in relation to the sale of
lands, in regard to which both buyer and seller had
equal opportunities of informing themselves. When
we reach a case where the parties do not occupy an
equal footing in this respect, we must pause." *Wannell
v. Kem*, 57 Mo. 493. (2) The instruction cannot be
reconciled with instruction number 1, given for appel-
lant, which omits altogether any notion of duty to
inquire on the part of appellant.

*John C. Orrick* for respondent.

(1) The court did not err in giving instruction
number 7, at the instance of respondent. The use of
the term "diligent inquiry," under the facts in this
case, did not mislead the jury, and, furthermore, that
instruction does not contain an abstract proposition of
law. (2) The other instructions given by the court, in
view of which the instruction complained of must be
construed clearly and favorably for appellant, declared
the law, as to effect of "false representations." (3) It
was not improper to assume (if such assumption was
made in the instructions as a whole) that appellant was
in as favorable position to estimate the future earnings
of the panorama as respondent. He admits he examined
the building and inspected the picture before he pur-
chased. That then he had been engaged in the theater
business, knew about panoramas in Chicago, heard they
were a success there, and, as appellant lived in St.
Louis, he was, in fact, in a better position to judge of
the support it would receive from the St. Louis public
than respondent, who was a stranger. (4) Where a
party chooses to make inquiry rather than rely upon
representations made, no action can be maintained.
*Hager v. Grossman*, 31 Ind. 223; *Nye v. Merriam*, 35
Vt. 438. (5) Appellant affirmed the sale or bargain
with full knowledge of the facts. In such case, the
transaction must be treated in the same manner as
though it was originally made under the same state of

knowledge. *Pratt v. Philibert*, 41 Me. 132; *Tuck v. Downing*, 76 Ill. 71; *Whiting v. Hill*, 23 Mich. 399. (6) The judgment is for the right party on the evidence, and, therefore, should not be disturbed. *Pratt v. Cabanne*, 12 Mo. 194.

BRACE, J.—The plaintiff in this action seeks to recover damages for false representations alleged to have been made by the defendant in a trade in which the plaintiff in exchange for fifty shares of paid up stock in the " Globe Panorama Company " sold and conveyed to the defendant a certain lot of ground in the city of St. Louis. The verdict was for the defendant, and from the judgment thereon in his favor the plaintiff appeals. Many grounds are assigned in the motion for a new trial, but the only one urged here, why the court should have granted a new trial, is the alleged error of the court in giving the seventh instruction for the plaintiff, which is as follows : " 7. If you find, from the evidence, that plaintiff, by diligent inquiry, might have ascertained the truth or falsity of the alleged representation, and failed to make such investigation, then the court instructs you, that he cannot recover in this action."

I. It is urged against this instruction that it is merely an abstract proposition of law and does not define or explain to the jury what meaning the law gives to the expression "diligent inquiry," and is, therefore, erroneous, and, in support of this contention, we are cited to many cases in which instructions were held to be erroneous, because legal propositions and the meaning of technical legal phrases or words were therein submitted to the jury, *e. g.*, *Fugate v. Carter*, 5 Mo. 267, and *Anderson v. McPike*, 86 Mo. 293, in which the jury were called upon to determine what was "a material averment ;" *Morgan v. Durfee*, 69 Mo. 469, to define "malice ;" *Boogher v. Neece*, 75 Mo. 383, in which the question of what was "adverse possession"

and " color of title" was left to the jury; *Wiser v. Ches-ley*, 53 Mo. 547, what was " gross negligence," and *Atte-berry v. Powell*, 29 Mo. 429, in which it was left to the jury to determine the meaning to be applied to the words "in substance" in an action of slander. In all these cases it will be observed, either a question of law, or the meaning of certain words and terms to which a special and peculiar meaning had, by law, been applied, was left to the jury, and it was properly held that this was error. It is possible that cases might arise in which the words "diligent inquiry" might become the proper subject of judicial interpretation, but in this case it is evident they were used by the court and could have been understood by the jury in no other than in their usual, ordinary and conventional sense, and such sense is presumed to be as well comprehended by the jury as the court, and needs no definition. It is not necessary that the meaning of ordinary words and phrases, used in their usual and conventional sense, should be explained in instructions.

II. It is further argued against said instruction that it asserts an incorrect legal proposition and ignores the difference between the situations of the parties in regard to the property concerning which the represen-tations are alleged to have been made. The facts upon which the court in its first instruction to the jury authorized a finding for the plaintiff were "that, if at the time when the defendant traded to plaintiff the panorama stock in the petition described, defendant was, and from the opening of the enterprise had been, business manager of the Globe Panorama Company, and in charge of the business in St. Louis, and that, with a view to the trade of the stock aforesaid to the plaintiff, and as an inducement thereto he stated to plaintiff, in substance, that the intrinsic and actual value of said panorama stock was one hundred dollars per share, and that none of said stock had been sold or

could be bought for less than par, or one hundred dollars per share, and if he further stated at the time and with the purpose aforesaid, that the actual cost price of the panorama property in St. Louis was seventy-five to eighty thousand dollars, and that from the opening of the business the company had been, and was still, doing a profitable business, and that, from the time the business opened, the company had been earning and paying a dividend of two per cent. or two dollars per share per month, and if you further find that said statements were untrue, that they were made for the purpose of deceiving and misleading plaintiff as to the true character or value of said stock, and if you find that plaintiff traded the Pine street lot for said stock on the faith of said representations, and that he would not have made the trade but for those statements and representations, and if you further find that the defendant, in making said representations, knew they were untrue, or if he made them, as of his own knowledge, without knowing whether they were true or false, and with the intent of deceiving and misleading the plaintiff, then the court instructs the jury that your verdict must be for the plaintiff."

The other instructions given, except the one under consideration were in harmony with this one. There was evidence to support this instruction, and, with the legal propositions, it asserts that no fault has been found. Nevertheless, the jury were told in the seventh instruction that, although they should find all these facts to exist, yet, if the plaintiff, by diligent inquiry, might have discovered that defendant's said representations were false, then he could not recover. In other words, the jury were told in this instruction that although the defendant made false representations as to material existent facts, calculated to affect the plaintiff's estimate of the value of the property, for the purpose of inducing him to trade therefor, upon which

Cottrill v. Krum.

the plaintiff relied, and by which he was induced to make the trade, yet, if by diligent inquiry, he might have discovered that such representations were false, then he could not recover.

We do not understand this to be the law. "It has indeed been laid down, as a broad proposition of law, that if the means of knowledge be at hand and equally available to both parties, and the subject of the transaction be open to the inspection of both alike, the injured party must avail himself of such means, if he would be heard to say that he was deceived by the representation of the other party, unless there was a warranty of the facts." Bigelow on the Law of Frauds, p. 522. This instruction cannot be maintained even upon the broad terms of this proposition, for by it the plaintiff is precluded from recovery if he could have discovered the truth by diligent inquiry, whether the means of knowledge were at hand, or whether they were equally available to him as to the defendant or not.

It may be well however to note the continuing remarks of Mr. Bigelow on the general proposition. He says, page 523, *et seq.*: "But there is serious ground for doubting the correctness of this proposition in its broad form. It will be seen upon reflection that the situation of the person to whom the misrepresentation was made is quite different in regard to means of knowledge from that of the person who made it. The latter may well be held to the duty to know the facts; no one has prevented him from knowing them. The former has been put off his guard and misled by the very representation which has been made. Indeed a representation may as well mislead even where the means of knowledge are directly at hand, as where they are not. The supposed rule in regard to means of knowledge came to be applied in this country before this distinction had been pointed out. * * * Recent authority has, however, gone far towards setting the

matter right in principle; the proposition has now become very widely accepted at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact notwithstanding the fact that the means of knowledge were specially open to him. * * * It may be improbable that a man with the truth in reach should accept a representation in regard to it, but the improbability can be no more than matter of fact. If the representation were of a character to induce action and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said in some loose sense to have been negligent, * * * for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'you were yourself guilty of negligence.'" After citing many cases illustrative of the principle here stated the learned author sums up thus, page 528: "The result appears to be not only in principle but by the weight of authority that the party to whom the representation is made is affected by means of knowledge or by notice only where the language or conduct was not of a kind to withdraw his attention from what otherwise he would be bound to know, *i. e.*, only where the representation was not calculated to put him off his guard, as in cases of representations of value or opinion."

To use the language of another author: "The doctrine of notice has no application where a distinct representation has been made. A man to whom a particular and distinct representation has been made is entitled to rely on the representation and need not make any further inquiry, although there are circumstances in the case from which an inference, inconsistent with the representation might be drawn." Kerr on Fraud, p. 80. "No man can complain that another has relied too implicitly on the truth of what he himself stated." Kerr on Fraud, p. 81. The same general

principle has been expressed by this court in the following terms: "It is no excuse for, nor does it lie in the mouth of, the defendant to aver that plaintiff might have discovered the wrong, and prevented its accomplishment had he exercised watchfulness, because this is but equivalent to saying, 'you trusted me therefore I had the right to betray you.'" *Pomeroy v. Benton,* 57 Mo. 531. (The same idea is expressed in another opinion, thus: "We doubt if it is equity to allow a sharper to insist on the fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquiries." *Wannell v. Kem,* 57 Mo. 478.

It is not seen how instruction number 7 can be maintained without doing violence to the just and equitable principles announced in these authorities even conceding that the parties at the time were upon an equal footing, and, therefore, to be treated as dealing at arm's length, but when it is considered that the defendant was the originator and promoter of the enterprise, its business manager, fully conversant with every fact of its past history and present condition, having actual knowledge of the cost of the plant, the amount of the stock and the dividend it was actually yielding, and that the plaintiff was a stranger to the enterprise, it becomes at once apparent that the means of knowledge were not in fact equally available to the plaintiff as to the defendant and the instruction has nothing to stand upon, for, "where the parties do not stand upon equal footing, the objection to a plea or claim of false representations, that the party to whom they were made was 'negligent' in not making inquiry or examination has still less force, and would nowhere be allowed." Bigelow on Fraud, *supra,* p. 534; *Wannell v. Kem, supra.* So that in any view of the case this instruction must be condemned.

3. There is nothing in the contention that the plaintiff waived his right to sue for damages for false

representations by reason of the fact that after the purchase of the stock and before suit he may have offered the stock for sale at par, or that four or five months elapsed between the time when he acquired the stock and the institution of his suit. Nor is it within the power of this court to say the judgment is for the right party, and ought to be affirmed, when there has been a substantial misdirection of the jury upon a question of law bearing upon the issues of fact to be tried by the jury, but for which they might have reached a different conclusion. For the error of the court in giving the seventh instruction the judgment is reversed and cause remanded for new trial. All concur.