# NANNIE E. SCHWAB v. BROTHERHOOD OF AMERICAN YOEMEN, Appellant.

### Division One, July 31, 1924.

1. **IMPLIED WAIVER.** A waiver is an intentional relinquishment of a known right, and to make out a case of implied waiver of a legal right there must be a clear, unequivocal and decisive act showing such purpose, or acts amounting to estoppel. Even in insurance cases the intention to waive must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve some element of estoppel.

2. ———: Assessment Insurance: Forfeiture: Retention of Premium Paid: Useless Act. The only circumstance upon which a waiver can

Schwab v. American Yeomen.

be predicated in this case is the failure of defendant, sued on a total disability clause in an assessment insurance policy by the insured, to return a premium paid on November 30th, the due date. It amounted to eighty-five cents, and before it was mailed to defendant's home office in another state, defendant, in the most positive terms, had denied liability under the certificate, because of the insured's false representations in its procurement, and had offered to pay to her the premiums previously paid, and its letter carrying a check for the amount and hers carrying the eighty-five cents passed each other in transportation, and hers was not received by defendant until after she had filed suit on December 3rd. The next day she rejected the check for the premiums previously paid, and her attorneys wrote defendant of her refusal to accept them. The defendant did not return the eighty-five cents, but wrote the local officer to accept no more payments, and no more were received. No tender back of the eighty-five cents was made until the defendant filed its answer at the next term. *Held*, that there was no implied waiver. There was nothing in the situation calling for a reassertion by defendant of its right to a forfeiture, or that made it incumbent upon it to make a tender of the eighty-five cents which it had every reason to believe would be rejected, as the tender of the premiums had previously been.

3. ———: ———: ———: ———: **Estoppel.** Having paid a premium on its due date in the face of the company's positive disclaimer of liability on the certificate of insurance, and filed suit before the company could take any action in reference thereto, and the company having asserted its claim of forfeiture upon its first appearance in court, the insured was in no wise misled to her disadvantage by the retention of the premium until such appearance, and there is no element of estoppel which the insured can invoke.

Headnote 1: Insurance, 33 C. J. par. 860; Waiver, 40 Cyc. 252, 269. Headnotes 2 and 3: Insurance: 2, 33 C. J. par. 860. 3, 32 C. J. par. 624.

Transferred from Springfield Court of Appeals.

REVERSED.

*John T. Sturgis* and *Frank B. Williams* for appellant.

(1) The representations as to health and past medical treatment, in the application and medical examination, were, by the policy contract, made warranties and, if false, rendered the policy void. Kribs v. Foresters, 191 Mo.

App. 524; Daffron v. Modern Woodmen, 190 Mo. App. 303; 316; Valleroy v. Knights of Columbus, 135 Mo. App. 574; Floyd v. Modern Woodmen, 166 Mo. App. 166; Hoagland v. Modern Woodmen, 157 Mo. App. 15. (2) The only ground on which the court found for plaintiff was that defendant, by accepting and retaining premium payments after obtaining knowledge of the false representations, waived or was estopped to claim a forfeiture on these grounds. This is not tenable on the facts here. Waiver is an intentional relinquishment of a known right. In the absence of facts constituting an estoppel, both the intention to relinquish the right must exist and the acts constituting or creating the right relinquished must be known to the party waiving same. Neither of these elements existed here. 40 Cyc. 252; 27 R. C. L. 980; Michigan Savings & Loan Assn. v. Trust Co., 73 Mo. App. 161; Stifel v. Life Association, 50 Mo. App. 224; Fulkerson v. Lynn, 64 Mo. App. 649; Davis v. Knights & Ladies of Security, 196 Mo. App. 485; Porter v. Loyal Americans, 180 Mo. App. 533; Daffron v. Modern Woodmen, 190 Mo. App. 303. (3) The retention of the premiums paid after said forfeiture to the time of the trial does not constitute waiver of the forfeiture. It is not the law that the reception and retention of premium payments by defendant, after it had knowledge of the false statements contained in plaintiff's application, is a waiver of such defense. It is sufficient, under the statute, in all cases, to preserve this defense, that defendant deposit in court "at or before trial" the premiums so received. Sec. 6145, R. S. 1919; Dye v. Life Ins. Co., 227 S. W. 1062.

RAGLAND, J.—This appeal was first lodged with the Springfield Court of Appeals and was argued and submitted there. The decision reached by a majority of that court was deemed by one of its members to be contrary to previous decisions of the other courts of appeals, hence the certification of the cause here.

The issues under the pleadings, and the facts, are correctly outlined in the principal opinion as follows:

"There is but one question to be determined in this case, and that is whether there is any evidence from which a trier of the fact could reasonably find that the defendant had by its conduct impliedly waived the right to insist upon a forfeiture of the certificate of insurance, and we shall therefore state the facts of the case with a view to the conclusion to be reached on a determination of this sole question.

"It appears from the record that the appellant (hereafter referred to as the defendant) is a fraternal benefit society of the State of Iowa and doing business in the State of Missouri. In April, 1917, a certificate of insurance was issued to the plaintiff. It was duplex in character, the same providing that upon satisfactory proof that the holder of the certificate had become totally disabled, one-half of the principal sum of the insurance would be due. It is shown that there was a provision in the policy that, owing to the age of the plaintiff and the amount of the monthly payments she was making at the time of the alleged disability, the total amount of the insurance was something over $700, and that half of this amount was due on proof of total disability and the other half would become due on the death of the insured provided she kept up the regular monthly payments. This suit is for the amount due for total disability, which is for half of the total amount. The trial court gave her a judgment for $355.84, and it is from this judgment that the appeal is taken.

"The undisputed facts show that at the time the plaintiff made application for this insurance she incorporated in her application certain warranties, which the trial court found to be untrue and breached, that is, she misrepresented the facts in her application for insurance in that she stated that the only operation which had ever been performed on her was for appendicitis, whereas the proof at the trial showed, and the court so found in its finding of facts, that, prior to the application for insurance, she had been operated on for womb trouble and that

her fallopian tubes had been removed. Her claim for disability was based on trouble with this organ. The direct question was asked her in her application concerning this and she denied ever having had such an operation. We, therefore, must take this case upon the finding of facts made by the trial court for which there was ample evidence in support thereof, and in fact conclusive evidence to our minds in support thereof, which is that when the plaintiff procured the certificate of insurance from the defendant she had made a material misrepresentation, which was a warranty, and which under the law of Missouri is a sufficient ground for associations, such as this defendant is, to forfeit the certificate. [Cromeens v. Sovereign Camp, 233 S. W. 287; Kribs v. United Order of Foresters, 191 Mo. App. 524; Daffron v. Modern Woodmen, 190 Mo. App. 303; Wilson v. Brotherhood, 223 S. W. 992.]

"The record before us shows, without contradiction, and as found in the finding of facts by the trial court, that on August 18, 1918, the plaintiff made up her proof of loss for total disability, and on the 19th day of August, 1918, there was in the hands of the defendant the proof of loss and the affidavits of the physicians, which affidavits showed that the plaintiff had made misrepresentations in the application for the certificate of insurance. The August dues were paid to the correspondent of the local "homestead," and so were the September dues paid, and the October dues were paid on October 7th. On October 7th, the day on which the October dues were paid, the same not becoming delinquent until after October 31st, the attorneys for the plaintiff wrote to the defendant reciting that their client was totally disabled and asking what the defendant would require for further proof. In answer to that letter, on October 16th, the defendant wrote to the attorneys for the plaintiff that it did not feel that Mrs. Schwab was entitled to anything, for the reason that she failed to state the true condition in her application when she joined the society, and that had she stated the true

conditions she would not have been permitted to become a member; and further stated that the board felt that all she could expect from the society was a refund of the money which she had paid in her monthly installments. On October 28th, the chief correspondent for the defendant company in Des Moines, Iowa, the home office of defendant, wrote to the plaintiff that the board of directors had rejected her claim for disability, and had instructed the supreme office to refund the dues which she had paid, and informing her that if she would hand the certificate over to the homestead correspondent at Springfield she would receive a check for the dues theretofore paid. On October 16th, the same day that defendant wrote to plaintiff's attorneys, it also wrote to its correspondent in charge of the homestead at Springfield that all the defendant would do would be to return to Mrs. Schwab the dues which she had paid and asked him to ascertain whether she would surrender the certificate on the return of these dues. On October 24th, the correspondent of the homestead wrote defendant that it had called on the plaintiff, but had been unable to see her on account of the family being ill with influenza. On November 25th following, the local correspondent wrote to the defendant association that he had called on the plaintiff in regard to her disability claim, and that she did not want to surrender her certificate and receive back the amount of the payment she had made. In this letter he asked the home office to advise him whether he was to accept the November dues, which must be paid on or before November 30th, and stating that she was desirous of paying them. On November 30th, the plaintiff paid eighty-five cents to the local correspondent for the defendant and took his receipt therefor.

"There is no claim in this case that the local correspondent had authority to waive any provisions of the by-laws or contract of insurance. This eighty-five cents the correspondent sent in to the chief office at Des Moines, and the finding of facts is that on December 1st, which was before it would have received the eighty-five cents

paid November 30th, the defendant wrote a letter from Des Moines, Iowa, to the local correspondent enclosing a check for $20.95, which was the total amount of dues that it had received and was offering back to plaintiff, which of course, did not include the last payment made on November 30th. The court made a finding of fact, and which was conclusively a fact, that the letter in which he enclosed the November dues to the defendant passed the letter which defendant wrote to him on December 1st, while in the mails, that is to say, the defendant on December 1st did not know, when it was returning all of the dues which had been paid prior to November 30th, that any dues had been received by the local correspondent for November. On December 3rd, which was before the defendant could possibly have had a reasonable time given it to decide on whether it would retain the November payment which had been forwarded to it by the local correspondent, the plaintiff filed this suit, and then on December 4th the local correspondent returned the check for $20.95, past dues refused by plaintiff, and in that letter informed the defendant that plaintiff had brought suit the day before, on December 3rd. The eighty-five cents, which was the amount sent to the defendant for the November 30th payment, was not returned or offered to be returned by the defendant until it filed its answer to this suit, which appears from the record to have been on March 15, 1919. It did, however, instruct the local correspondent to receive no dues for December, and no dues were paid by plaintiff for December and none paid thereafter.

"Under this statement of facts the trial court held that the defendant had waived its right to forfeit the contract of insurance for disability, which right the court necessarily held could have been insisted upon up to the filing of the suit. We say this because the court found that there had been a breach of warranty which permitted the defendant to forfeit the certificate, and further found that October 16th, after which date nothing else was done

by the defendant up to the filing of the suit, was a reasonable time in which to investigate and determine whether it would insist upon a forfeiture. It is also shown that on that date the defendant did write to the attorneys for plaintiff stating that the evidence showed plaintiff had misrepresented facts which were warranties in her application for insurance, and refused from that time on to this date to pay for the total disability claimed, because of the misrepresentations. It therefore appears to us that if there could be any waiver in this case it must be from the fact that the defendant retained the eighty-five cents, which it actually received in the home office at Des Moines after this suit was instituted by the plaintiff on December 3rd.''

A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. [First National Bank v. Maxwell, 123 Cal. 360; Kilpatrick v. Railroad, 38 Nebr. 620; Viele v. Insurance Co., 26 Iowa, 9; Swedish American Bank v. Koebernick, 136 Wis. 473.] It has been said that the law of waiver is a ''technical doctrine introduced and applied by courts for the purpose of defeating forfeitures.'' It has also been said that in insurance cases the courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But even in insurance cases the *intention to waive* must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve *some* element of estoppel. [Parsons, Rich & Co. v. Lane, 97 Minn. 98.]

As pointed out in the statement and analysis of facts from which we have quoted, the only circumstance upon which a waiver can be predicated in this case is the failure of defendant to offer to return the premium paid November 30th. Defendant could not have offered to return such premium before the suit was filed because not received in

time for it to have done so. It did make such offer on its first appearance to the suit. At the time the eighty-five cents came into its hands it had theretofore in the most positive terms denied all liability under the certificate, because of plaintiff's false representations in its procurement; it had made a formal tender to her of the premiums paid under it; and the tender had been rejected. It is difficult to discover anything in the situation that called for a re-assertion by defendant of its right to a forfeiture, or that made it incumbent upon it to make a new tender which it had every reason to believe would be refused. However, it did shortly afterward instruct its local correspondent to accept no more dues from plaintiff and that instruction was followed. Defendant therefore impliedly reiterated its insistence of forfeiture up to the very moment of filing its answer in the suit, in which it again expressly asserted the right. How then can it be held that from defendant's failure to offer to return the premium of eighty-five cents, during the interim between its receipt and the filing of the answer, it may be inferred that defendant *intended* to abandon its right to avoid the policy? On the facts and circumstances as a whole such inference is clearly inadmissible.

Nor was plaintiff in any way placed at disadvantage by defendant's not offering to return, until it filed its answer, the premium paid November 30th. She was not misled with respect to bringing the suit because she paid the premium in the face of defendant's positive disclaimer of liability and then filed the suit before defendant could take any action with reference thereto; she was not misled with regard to the prosecution of the suit after it was begun because defendant asserted the claim of forfeiture upon its first appearance in court; there is not in fact a single element of estoppel which plaintiff can invoke.

For the reasons stated we are of the opinion that there was no substantial evidence upon which to base the finding of waiver. Our conclusions are in harmony with the general rule that a return of the premium is not essen-

tial to the avoidance of a policy, nor is its mere retention a waiver, especially where the insured was guilty of fraud in obtaining the policy. [14 R. C. L. 1193.]

The judgment of the trial court is reversed. All concur.