Victor B. BURNS and Edna I. Burns,
Respondents,

v.

VESTO COMPANY, Inc., a Corporation, and
M. Bruce Magers, Jr., Appellants.

No. 22442.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1956.

Walter J. Gresham, Gresham, Boughan & Whipple, Kansas City, for appellants.

William A. Collet, Kansas City, for respondents.

BROADDUS, Judge.

This is an action for damages arising out of the sale of a television set. The petition alleged that plaintiffs bought a television set from defendant Vesto Company and that the latter's vice-president represented it to be new, when in fact, it was a used set. Plaintiffs recovered a verdict and judgment for $209 actual and $2,500 punitive damages. Defendants have appealed.

The evidence discloses that on March 11, 1953, Paul Yokum, who lived in North Kansas City, purchased an Admiral Combination Television set from the defendant Vesto Company at its place of business in North Kansas City. Defendant M. Bruce Magers, Jr., a vice-president of the Vesto Company, made the sale. After the set was in Yokum's apartment, "it wasn't giving very good performance," so Yokum called defendant Bruce Magers and explained the situation to him. Magers sent service men and they "checked it over several times." Yokum still was not satisfied with the set's performance, so he called Magers and arranged to let the set go back as a "voluntary repossession." This was done on June 4, 1953. Yokum had executed a chattel mortgage covering the set. He had a copy of this mortgage in his possession. He also had copies of the repair orders which the service men had left with him. He put these papers "in the instruction booklet, inside the back of the television set", and this is where they were when the set went back to the Vesto Company.

On June 22, 1953, plaintiffs Victor B. and Edna I. Burns, husband and wife, went to the Vesto Company premises to buy a new television set. When defendant Bruce Magers asked if he could help them, after being introduced, Mr. Burns said, "We would like to see a new T.V. set." Magers said, "This is what we have", waving his hand around the sales or display room. Magers said that the combination (which plaintiffs bought) was "the only new set that he had with Channel 25 in it and ready to go." In response to Mrs. Burns' reference to dust on the set, Magers said, "Well, they probably haven't cleaned it off since it (had) been uncrated." In answer to a question of Mr. Burns, Magers said, "It carries the same guarantee as any other of our new sets." Plaintiffs bought the Admiral Combination set, which was the same set that had previously been sold to Yokum. Plaintiffs testified that they relied on Magers' statements that it was a new set, believed they were buying a new one and would not have bought it had they known it was a used set.

Some seven or eight months after the purchase plaintiffs found the Yokum papers in the instruction book in their set. Mr. Burns went back to Vesto and accused the defendant Magers of selling him a second-hand set. Magers did not deny it, admitted that he had made a mistake in leaving the Yokum papers in the set and asked Burns what he wanted done about it. Burns said he didn't want to cause anybody any trouble; that he thought he had purchased a new set and wanted the equivalent of what he had bought; that he wanted "the set fixed up so it would be like a new one," or else a new set delivered to him. Magers said he would send men out to fix the set up as a new set. The repairmen came but didn't fix the set so that it worked properly for any appreciable time. There were eight or nine of these service calls. Burns paid for five of them. His explanation was "the set kept going bad. I was going along with them, trying to absorb part of the bills, and they absorb a part. After all, they—it was their mistake in the first place, but yet I was willing not to cause any trouble."

Some months later Burns took the record player to the Vesto Company. He had tried to get it to work, but "it never had."

He told Magers that the television set still wasn't working and he had "paid out" (the installment contract had been paid off) and he thought it was up to Magers "to do something about it." Magers said he would "send a man out the next day to fix the set up for nothing." The repair man arrived and told Burns the set needed a new picture tube. In two or three days the repairmen were at Burns' house again and got the set working, "not perfectly, but working," and left a bill for $7.29. Burns called Joe Sherman, Service Manager of Vesto to discuss the $7.29 bill. Sherman threatened to sue Burns on the bill; then Sherman offered to forget the labor part of the bill if Burns would pay for a tube, all of which Burns declined to do. At Sherman's request Burns went to the Vesto store and talked to Sherman. Sherman insisted that Burns pay for the tube and sign a paper that would release defendants from all charges of "selling me a second-hand set." Burns' reply was, "absolutely not. * * * I told them that I'd turn it over to my lawyer."

Mr. William E. Young, an expert witness, testified that the value of this set as a new set "delivered from crates" was $459.-95 and the value of a used set was $250. The price stated in the chattel mortgage signed by plaintiffs was $574.04.

 Defendants contend that the court erred in refusing their peremptory instruction offered at the close of all the evidence. First, they say the petition stated no cause of action because it did not allege that the salesman was acting within the scope of his employment in making the alleged representations. Defendants did not challenge the sufficiency of the petition before the verdict was returned. It is a familiar rule that where no attack is made on a petition before verdict, an attack thereafter is unavailing unless the petition stated no cause of action at all. The petition here involved alleged that "defendant M. Bruce Magers, Jr., is a vice-president of said corporate defendant and is engaged as an agent, ser-

vant and employee of said corporate defendant on its behalf, in selling television sets" and that "on or about June 22, 1953, defendant M. Bruce Magers, Jr., acting as an agent, servant and employee of said corporate defendant, and on its behalf, at the defendant's place of business * * * made the following false and fraudulent misrepresentations * * *." From these allegations can it be reasonably implied that Bruce Magers, Jr., was acting within the scope of his employment at the time the representations were made? We think so, and our conclusion is supported by the cases of Todd v. Havlin, 72 Mo.App. 565, 568, 569 and Fleishman v. Ice & Fuel Co., 163 Mo. App. 416, 420, 421, 143 S.W. 881.

Under sub-division (2) of this point defendants assert that the evidence did not support the charge pleaded. That this contention lacks merit is clearly shown by the testimony of Mr. and Mrs. Burns.

 Under sub-division (3) they contend that the representation was actually true; that the word "new" does not mean "unused" or not "previously sold." This has not been the view taken by our courts. In the case of Jones v. Norman, Mo.App., 248 S.W. 621, 622, this court said: "To say to a purchaser that a car is 'new' means more than that it is of the latest model. 'New,' under such circumstances, may and does include the idea that it is not a second-hand or used car." In several cases the right of a party who has received second-hand or used property under representations that it was *new* to recover in an action for fraud and deceit has been upheld. See Smithpeter v. Mid-State Motor Co., Mo.App., 74 S.W.2d 47; Dixon v. Burtrum, Mo.App., 258 S.W.2d 24 and 104 A.L.R. 553, 554.

 And under (4) defendants claim that "the evidence showed only an honest mistake." Whether or not plaintiffs' damage was the result of intentional fraud or only an honest mistake on the part of Bruce Magers was purely a fact question.

■ Under (5) defendants say that plaintiffs knew that the salesman had only limited authority. Defendants argue that because plaintiffs admitted signing a chattel mortgage which recited that it contained the entire agreement and that there were no representations or warranties unless written into the contract, that plaintiffs thus had no right to rely upon oral representations of the salesman. It is no doubt true that the general rule is that the terms of a written contract may not be varied or contradicted by parol evidence. However, when fraud is relied upon, as here, that rule has no application. Tiffany v. Times Square Automobile Co., 168 Mo.App. 729, 154 S.W. 865; Horwitz v. Schaper, Mo. App., 119 S.W.2d 474, 481; National Theatre Supply Co. v. Rigney, Mo.App. 130 S.W.2d 258, 262.

Finally under (6) Point I defendants contend that plaintiffs "entered into a new agreement covering the subject matter, and thus waived the alleged fraud." They cite the case of Brown & Pounds v. South Joplin Lead & Zinc Mining Co., 231 Mo. 166, 132 S.W. 693. In that case the plaintiffs alleged fraudulent representations in inducing the execution of a mining lease. The findings of fact by the trial court recited that after plaintiffs were fully possessed of the facts they " 'entered into a new contract in writing with defendant company for a valid consideration, reducing the amount of the royalty, and making other changes in the lease * * *.' " The court there held that the making of the new contract, which "was to the advantage of the plaintiffs", after knowledge of the fraud precluded recovery for the original fraud inducing the execution of the original lease.

We have no fault to find with the holding in the Brown case, but it has no application to the instant case. The testimony here is that plaintiff Victor Burns in his first conversation with Bruce Magers after discovery of the fraud said to Magers: "I told him that I wanted that set fixed up as so it would be like a new one, or else de-

liver a new television set to my house, because that's what I had bought was a new set. * * * When he asked me what I wanted to do about it, I told him, well, I didn't want to cause anybody any trouble, all I wanted was equivalent of what I'd bought from him * * *." Plaintiff Burns further testified that defendants "never did get the set fixed up * * *. They have worked at it, but they never did get the set working right."

In 24 Am.Jur. page 44 it is said: "Merely calling upon a seller guilty of fraud to remedy defects has been held not to constitute a waiver of his right to recover damages for deceit in the sale, and a similar result has been reached where there is an agreement to satisfy the buyer's complaints about the property."

■ As said in the case of Schwab v. Brotherhood of American Yeoman, 305 Mo. 148, 264 S.W. 690, 692: "A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part." Our Supreme Court has also held that: "Waiver is essentially a matter of intention. * * * Whatever parties do or forbear to do, therefore, their acts or omissions, to be construed as waivers, *must be so manifestly consistent with and indicative of an intention to relinquish the particular right or benefit that no other reasonable explanation of their conduct is possible.*" (Emphasis ours.) Langdon v. Kleeman, 278 Mo. 236, 211 S.W. 877, 878. With these rules in mind, we are not inclined to hold that as a matter of law, plaintiffs clearly and unequivocally manifested an intention to condone the fraud practised upon them and to waive their right of action therefor. The court committed no error in refusing defendants peremptory instruction.

■ In their Point II defendants contend that it was error for the trial court to

refuse their offered Instruction C, which sought to define the word "new". The word "new" is not a technical word. It is an ordinary one and its meaning is generally understood. Many cases in this state hold that it is not necessary to explain to the jury the meaning of ordinary words when used in instructions in their usual and conventional sense. Cottrill v. Krum, 100 Mo. 397, 13 S.W. 753; Porter v. Equitable Life Assur. Soc., Mo.App., 71 S.W.2d 766. Thus the court committed no error in this respect.

Defendants' last point is that the court erred in giving Instruction 1. This was plaintiffs' main instruction. Defendants contend that the instruction (1) submits an issue not pleaded, and (2) assumes matters not proved. These two complaints relate to the same matters set forth in sub-divisions (1) and (5) of Point I of defendants' brief. As we have pointed out, they lack merit. Under (3) defendants assert that the instruction assumes that the representation was false. Here they again contend that the word "new" does not mean "unused" or not "previously sold". Under (4) they contend that the instruction "assumes fraud regardless of knowledge." A mere reference to the language of the instruction refutes this contention. After requiring certain findings, the instruction then says "and if you further find that said television set was not, at the time of said sale, a 'new' set, if so, but that the same was a 'used' set, if so, and had previously been sold and delivered to one Paul Yokum, and used by him in his home, if so, and that defendant M. Bruce Magers, Jr., as such employee of defendant corporation, *knew* such to be a fact at the time of the sale of said set to plaintiffs, if so, * *." The instruction contains all the elements of actionable fraud as set out by our Supreme Court in the case of Lowther v. Hays, Mo., 225 S.W.2d 708.

Finding no error in the record prejudicial to defendants, the judgment is affirmed. All concur.