Homer W. PARKER, Respondent,

v.

Jerry GREEN, d/b/a Jerry Green Chevrolet, Appellant.

No. 23100.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

A. E. Margolin, F. Philip Kirwan, Richard W. Miller, Kansas City, for appellant.

Edward F. Aylward, Robert A. Meyers, Kansas City, for respondent.

CROSS, Judge.

Plaintiff Homer W. Parker sues defendant Jerry Green for actual and punitive damages. The claim arises from alleged fraud attributed to defendant in the sale of a used automobile. Defendant appeals from a jury verdict and judgment awarding plaintiff $235 actual and $1,000 punitive damages.

The allegations of the petition, generally denied by answer, import that plaintiff proposed to purchase of defendant a 1953 Packard "Series 400" automobile; that defendant, (through servants, agents and employees), offering to sell plaintiff a certain used automobile, falsely and fraudulently and with intent to deceive plaintiff, represented it to be a 1953 Packard "Series 400", when in fact it was a 1953 Packard "Series 300"; that plaintiff, relying on defendant's untrue representations, bought the automobile, to his loss and damage.

A contention made by defendant is that no case of fraud was made for submission to the jury. In determining that question, we must assume the truth of every fact and circumstance in plaintiff's favor shown in evidence, whether by plaintiff or defendant, and give plaintiff the benefit of all reasonable inferences which may fairly be drawn therefrom. All evidence and inferences unfavorable to plaintiff will be disregarded. Under the foregoing limitations, we set out applicable portions of the evidence.

Plaintiff wanted to buy a Packard Series "400" automobile. Driving to work on the morning of Friday, January 3, 1958, he passed defendant's used car lot, noticed a "nice clean looking car" and stopped and looked at it. That night he returned to defendant's place of business, went in the office, and inquired about the automobile. Plaintiff talked to two men. One of them was a tall, slender, young salesman; the

other was an older heavy set man. "They were both standing right there together when I went in the office". Plaintiff said, "I am interested in that Packard", and inquired, "Is that a '400' Packard?" The young salesman replied, "Yes, sir". The heavy set man went out and examined, drove and "appraised" plaintiff's car. He informed plaintiff that the cash difference for a trade would be approximately $500. Plaintiff thought that was too much and said he would come back later. He returned to defendant's car lot on the following Monday morning and again talked to the young, tall salesman about buying the Packard car. Plaintiff offered to trade his own car for defendant's Packard by paying $400 in cash additionally. The young salesman accepted the offer after "somebody O.K.'d it". He wrote up and initialed the sales order. The agreed price of the Packard car was $895; plaintiff paid $400 in cash and his car was accepted in trade at a value of $495. The purchase order described the automobile as a "Packard 400 Series, 4 door, 1953".

When plaintiff applied for ownership documents and a license for the Packard, he discovered it was a "300" series—not a "400" series as represented.

The "400" series is a higher priced and better model than the "300" series. The "400" has different upholstery, body trim, and equipment, which contribute to its higher price and generally better quality. The "400" motor has a 9 bearing crankshaft, is smoother, and runs better than the "300" motor, which has a 5 bearing crankshaft. There was no way to identify the motor and mechanical details without stripping the car down.

Plaintiff testified, "I wanted the best car they made which was the '400' or 'Patrician' * * * I thought it was a '400' * * * I didn't know the difference, or I wouldn't have bought it * * * I wanted the better car". Plaintiff "accepted his (the salesman's) word for it".

Russell Wade, a car dealer, testified on plaintiff's behalf that he had bought and sold all types of used cars, wholesale and retail, for 20 years. He had bought and sold Packard automobiles through the years and was familiar with them, including the 1953 "300 Series" and "400 Series". In his opinion, the value of a 1953 Packard Series "300" automobile in reasonably good condition was, in January of 1958, from $300 to $400 less than the value of a 1953 "Series 400" of like condition.

Defendant's evidence divulges facts and circumstances and resulting permissible inferences favorable to plaintiff. Robert J. McCaine, 26 years old, had worked for Jerry Green as a used car salesman for a year and a half. He formerly was employed by Allen Chevrolet as a new and used car salesman. He took "trade-ins—just about any type that you could imagine that is usually traded in on a new car". He admitted that as a used car trader he made sure what he was going to get and that when he took a car in trade he would "make sure what it is". He had personally owned two Packard "400's".

McCaine testified that he talked to plaintiff "when he came in to purchase the car", and admitted that he represented the car to be a "400" Series. The following excerpt is from McCaine's testimony:

"Q. You really didn't know whether or not it was, (a '300' Series), in fact? A. No, sir, I didn't.

"Q. And yet you went ahead and made that remark to Mr. Parker, is that correct? A. Yes, sir."

McCaine further testified that he had "Fletcher" appraise plaintiff's car on Friday evening, January 3d, "at night because it was dark"; also, that he later "sold" plaintiff the car and wrote up the sales order describing it as a "Packard 400 Series, four door, 1953".

Harold Fletcher testified on behalf of defendant that in January of 1958 he was "used car manager" at Jerry Green's Chevrolet. Fletcher had been a Packard dealer

for eight years as owner of Packard Country Club Motors, and had spent thirty years with the Packard Motor Company in different capacities, making a total of thirty-eight years "with Packard". He had been buying and selling cars for forty years. As a Packard dealer, Fletcher had originally sold the controversial automobile, when new, to a relative. He was "particularly familiar with this automobile in question * * * having had it in my new car stock and selling it to my cousin". He "knew quite a little bit about it". He testified he knew the Packard had come into the Jerry Green Agency in trade. Fletcher related that "one cold winter night", early in January, 1958, prior to January 7th, he met plaintiff and appraised plaintiff's car. He testified:

"Q. Did you have occasion to have a conversation with Mr. Parker on the occasion when you appraised this automobile?

"A. Yes, I did.

"Q. Would you relate what the conversation was?

"A. My man called me to appraise Mr. Parker's car, and upon checking it and appraising it, I endeavored to enter into the sales conversation with Mr. Parker and the salesman, which you always do to try to consummate a deal, and I endeavored to tell Mr. Parker that I knew about the car and that I had been a Packard dealer and that I sold it new and that my cousin bought the car from me, and the other things that I intended to relate, but Mr. Parker said, "Well, Mr. Fletcher, I probably know considerably more about that than you think I do about the car, because I have kind of watched the car for seven or ten days on my way home in the evening, even after you were closed," so I didn't say anything more. He knew plenty about the car so there was no need to go into it any farther."

█ Defendant's first assignment is that the case was erroneously submitted to the jury "for the reason that no fraud was shown". Defendant argues that the facts were as consistent with honesty and good faith as with fraud, and that, therefore, plaintiff failed to make a case; also, that the false representation made by defendant's salesman was not fraud because he honestly but mistakenly believed it to be true. We can not say as a matter of law that the evidence, viewed in plaintiff's favor, points to honesty, good faith or mistaken belief on the part of defendant in the transaction. Those issues of defense were submitted to the jury as questions of fact under Instruction No. Five, which was given at the request of defendant and which required the jury to return a verdict for defendant if they found "that the statement made by defendant's salesman was made in good faith, honestly believing that it was true, and that such belief was based on his own experience on which he relied, and that said salesman had no purpose or intent to mislead, deceive or defraud plaintiff thereby". The jury rejected defendant's evidence on the issue submitted in the instruction. Whether or not plaintiff's damage was the result of intentional fraud or only an honest mistake was purely a fact question. Burns v. Vesto Co., Mo.App., 295 S.W.2d 576.

Defendant urges that plaintiff's case lacks the essential element of scienter, and claims there is no pleading or proof that the salesman who erroneously described the car plaintiff was looking at as a "Series 400," knew that the car was not a "Series 400," or that he knew he didn't know when he made the statement.

██ The petition contains the following averment: "Defendant's representation through his agents, servants and employees, as aforesaid, was false and fraudulent, defendant(s) having willfully, wickedly and maliciously represented the facts with the intention of defrauding plaintiff". Defendant admits that the foregoing language pleads *actual scienter*, but insists, without citation of authority, that it does not plead

*constructive scienter*—that defendant had conscious knowledge, when he made the false representation, that he did not know whether it was true or false. We rule that the quoted allegation sufficiently pleads the issue of scienter as it was submitted to the jury under the alternative hypotheses of actual knowledge, or constructive knowledge. See Vol. 37 C.J.S. Fraud § 83, p. 380, citing Morrow v. Franklin, 289 Mo. 549, 233 S.W. 224; Adams v. Barber, 157 Mo.App. 370, 139 S.W. 489. Further, the record shows that no attack was made on the petition, prior to the verdict, in respect to the averment of scienter. The complaint now, after verdict, is unavailing. Burns v. Vesto Co., Mo.App., 295 S.W.2d 576.

■ Defendant's contention that there is no proof of scienter is unsound. The evidence adequately supports the submission of that issue and the jury's finding on it. Fraud may be established by circumstantial evidence, as it is seldom susceptible of proof by direct evidence. Salmon v. Brookshire, Mo.App., 301 S.W.2d 48; Shepherd v. Woodson, Mo.Sup., 328 S.W.2d 1. The record contains facts and circumstances from which the jury could justifiably find that defendant's salesman either (1) knew the car was not a "400 Series" when he falsely so stated, or (2) that he made the false statement in conscious ignorance of its truth.

From the evidence before it, the jury could have drawn the following inferences: (1) that, by reason of salesman McCaine's experience in trading used cars, his familiarity with just about any type of used car trade-ins, his admitted practice of making sure what kind of automobile he was dealing with, and his personal ownership of two Packard "400 Series" automobiles, he actually knew the Packard was a "300 Series," but fraudulently misrepresented it to plaintiff as a "Series 400"; (2) that, when the Packard was placed on defendant's used car lot for sale, sales manager Fletcher, who knew the life history of the car, informed McCaine that the

Packard was a "300 Series"; (3) that Fletcher, having heard McCaine falsely represent the Packard as a "400 Series," deliberately withheld from plaintiff the fact that it was a "300 Series"; (4) that, even if McCaine had been "honestly mistaken" on Friday night, he had learned by Monday morning, from Fletcher, that the car was not a "400 Series"; (5) that, when McCaine described the Packard in the written sales order as a "400 Series", he repeated the false representation he had made on Friday night, and did it with guilty knowledge of its falsity.

■ The jury could have found that Fletcher, as defendant's employee and agent, also made the false representation that the Packard was a "400 Series", with guilty knowledge and fraudulent intent, by standing silent when he heard plaintiff inquire if the car were of that series and heard McCaine state falsely that it was. Such finding would have been within the scope of the petition and instructions and warranted by the evidence, and alone would support the verdict. If a fact is peculiarly within the knowledge of one party by reason of his superior knowledge, and not within the fair and reasonable reach of the other party, a legal duty of disclosure arises. A deliberate concealment of such fact, by silence, is fraud. 37 C.J.S. Fraud § 16, p. 246; Jones et al. v. Arnold et al., 359 Mo. 161, 221 S.W.2d 187; Hanson v. Acceptance Finance Co., Mo.App., 270 S.W.2d 143.

■ Defendant next contends that plaintiff's Instruction No. One is erroneous in its hypothesis of scienter. The part of the instruction for discussion is as follows " * * * and if you further find that the defendant, his agents, servants and employees knew that said representation, if any, as to said automobile being a '400 Series' was false and fraudulent or that they did not know whether said representation was true or false at the time said representation was made * * *." The first complaint of the instruction is that there was no evidence to support the first

hypothesis of scienter as actual knowledge. In view of our previous discussion of the evidence touching the question of scienter, we find no merit in the complaint. Defendant relies upon Jos. Greenspon's Son Pipe Corp. v. Hyman-Michaels Co., Mo.App., 133 S.W.2d 426, another fraud case in which the issue of scienter was submitted on the alternative bases of actual or constructive knowledge. The court there held that under the evidence the issue was improperly submitted on the basis of actual knowledge. However, the case is not in point, because, as stated in the opinion, there was no evidence or any pretense by plaintiff, that defendant's agent actually knew that his representation was false at the time he made it. In the case before us, plaintiff makes no such concession, but insists otherwise, and has shown facts and circumstances in evidence permitting the jury to find, in their judgment, that defendant's salesman actually knew the falsity of his statement. It was a jury question whether the false statement was made with knowledge of its falsity. The more recent case, Wolf v. Kansas City Tire & Service Co., Mo.App., 257 S.W.2d 408, 414, is directly in point and approves the submission of alternative hypotheses of scienter, as was done in the present case, in the following language: "Defendants apparently believe that, because the instruction required the jury to find that the defendants *knew* that the representations were false *or* that they were made without knowing whether they were true or false, converts the submission of the *grounds* of fraud from a submission in the *conjunctive* to a submission in the *disjunctive,* and seek to apply the principle that when several *grounds* of liability are submitted in the *disjunctive* there must be evidence to support all of such *grounds*. That principle has no application in the instant case because the *grounds* of fraud were submitted in the *conjunctive*. If the defendants *knew* that any of such representations was false *or* if they recklessly made *any one* of said representations without knowing whether it was true or false, then

they would be liable for having made that *representation."*

 Defendant's second claim of error in Instruction No. Five is directed to the second alternative hypothesis of scienter (constructive) stated in the words: " * * or that they did not know whether said representation was true or false at the time said representation was made * * *." The error claimed is that the clause omits the predicate "that he was conscious of the fact that he had no knowledge of the truth or falsity of the statement". The contention has no merit because there is no omission of such predicate. That element is found to be present in the clause when its language is considered under grammatical usage and legal rules of interpretation. The clause contains a grammatical ellipsis—the omission of the word "knew" immediately preceding the entire clause. Ellipsis is a common and sanctioned usage in writing and speaking. Its function is to avoid tautology and to make language more vivid. It is apparent that the clause being considered is co-ordinate with the preceding clause "that said representation, if any, as to said automobile being a 400 Series was false and fraudulent". Both clauses are grammatical objects of the verb "knew", which is expressed in writing before the first object clause, but is "understood" as to the second. Neither of the clauses is the object of the verb "find". Therefore, the true meaning of the criticised clause is: "or (knew) that they did not know whether said representation was true or false at the time said representation was made". This interpretation is supported by the well known "last antecedent" doctrine, under which words, phrases and clauses are applied to the word or phrase immediately preceding, not to others more remote. MacKinnon v. Weber, Mo.App., 109 S.W.2d 692, cited by defendant, has no application. The instruction held erroneous in that case, unlike the one at hand, was completely void of any words requiring a finding of *conscious* lack of knowledge.

Defendant charges the trial court with error in giving plaintiff's Instruction No. Three authorizing the assessment of punitive damages. It is the law that punitive damages may be awarded when fraud and deceit have been established in a case if legal malice is present. Legal malice arises from the intentional doing of a wrongful act without just cause or excuse. It is not essential to show that the act was done wilfully or wantonly, or with spite or ill will. Luikart v. Miller, Mo.Sup., 48 S.W. 2d 867; Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083; Davis v. Nash Central Motors, Mo.App., 332 S.W.2d 475. The jury found from adequate supporting evidence that defendant intentionally and wrongfully made the false representation as set out in Instruction No. One, without just cause or excuse. The law implies malice from that act. The issue of punitive damages was properly submitted to the jury under Instruction No. Three.

Defendant finally contends that the court erred in permitting plaintiff to testify concerning statements made by "unidentified persons". Plaintiff testified that at defendant's used car lot he talked to a young salesman who sold him the Packard and to an older man who appraised his car. Plaintiff adequately identified those persons as defendant's employees by the circumstances detailed in his testimony. Actually those two men have identified themselves. McCaine testified that he talked to plaintiff, told him the Packard was a "400 Series", had Fletcher appraise plaintiff's car, and later sold plaintiff the Packard. Fletcher testified he appraised plaintiff's car for "his salesman" and talked to plaintiff. The evidence favorable to plaintiff shows that he had talked to only one of the defendant's salesmen and to the man who appraised his car. Only one employee of defendant made the appraisal. Those two men are McCaine and Fletcher by their own admissions. The cases cited by defendant on this point are not relevant. The facts found in them are grossly dissimilar to those before us. The contention is without merit.

The evidence supports the jury's finding of all essential fraud elements as defined by Missouri courts. The amount of compensatory damages awarded is commensurate with the proof. The assessment of punitive damages is not intemperate or indicative of any passion felt by the jury.

As no error has been demonstrated by this appeal, the judgment is affirmed.

All concur.