## FARMERS' CONSERVATIVE MUTUAL INSURANCE COMPANY *v.* NEDDO.

[No. 16,635.   Filed March 24, 1942.]

2

*Arnold, Chipman & Degnan* and *Robert Zimmerman,* all of South Bend, for appellant.

*Hammerschmidt & Johnson,* of South Bend, for appellee.

BEDWELL, P. J.—In this action the appellee, Frank I. Neddo, recovered a judgment in the amount of $1540 against the appellant, Farmers Conservative Mutual Insurance Company, on a policy of fire insurance. The appellant is relying upon the overruling of its motion for a new trial for reversal. Under proper specifications in such motion, it claims error in the following particulars, namely:

(1). Refusal of the trial court to give its instruction No. 1, directing the jury to find for the appellant. It contends that this instruction should have been given because the evidence, without dispute, showed a violation by appellee of the "vacancy provision" contained in the policy sued upon and that there was no evidence sufficient to establish waiver of such provision.

(2). That the trial court erred in giving to the jury its instruction No. 2. It contends that this particular instruction was erroneous because a portion thereof permitted the jury to determine whether or not the appellant had specifically waived the vacancy clause of the fire insurance policy sued on when there was no evidence to support waiver.

(3). That the trial court erred in giving to the jury its instruction No. 3. The portion of such instruction complained of advised the jury that,

"In determining whether or not the issuance of said policy of insurance pursuant to a written application therefor containing said words 'these buildings may be moved on account of railroad back 50 ft.' amounted to a waiver of the provisions of said policy suspending its operation and coverage

if said premises were left vacant for a period of longer than ten days, you may take into consideration the length of time that might reasonably be required to effect a removal of the buildings described in said insurance policy 'back 50 ft.' also you may take into consideration the reasonableness or unreasonableness of said buildings being necessarily vacant or not during the period of time required to effect the removal of said buildings 'back 50 ft.'."

(4). Error of the trial court in giving to the jury its instruction No. 5 and instruction No. 9 tendered by appellee because such instructions submitted to the jury for determination the question of whether an appraiser selected by appellant was disinterested.

(5). That the verdict of the jury in favor of the appellee was not sustained by sufficient evidence. It contends that the evidence was insufficient to sustain the verdict because it showed, without contradiction, that appellee had violated the fire insurance policy sued upon by permitting the insured property to become vacant for more than ten days.

For an understanding of the legal propositions asserted by appellant, we state the following concerning the pleadings and the evidence:

On October 5, 1938, appellee filed his complaint against appellant to recover damages alleged to have occurred on the 22nd day of April, 1937, because of the destruction by fire of a dwelling house insured for $1500, certain household furniture therein insured for $300, and family provisions and produce therein insured for $100 by a policy of fire insurance issued by appellant to appellee on the 5th day of March, 1936. The policy was made a part of the complaint which alleged that the plaintiff had performed all the conditions thereof on his part to be performed.

The appellant filed answer in three paragraphs, the first being in general denial; the second quoting the vacancy provision of the fire insurance policy and alleging violation thereof by the appellee in that he permitted the dwelling house destroyed by fire to become and remain vacant and unoccupied from March 1, 1937, to and including April 22, 1937; and the third setting forth a provision of the policy providing for the appointment of appraisers, one of whom should be selected by the insurer and the other by the insured, and providing for an appraisement of the loss by such appraisers and an umpire selected by them. This paragraph further alleged that on the 22nd day of July, 1937, the appellant, by notice in writing, notified the appellee of an appraiser selected by it and requested the appellee to select an appraiser, but that the appellee failed, refused and neglected to appoint an appraiser in accordance with the provisions of the policy.

The appellee filed a demurrer to the second paragraph of appellant's answer and specified in his memorandum that such answer failed to allege that the appellant returned, or offered to return, all unearned premiums. This demurrer was overruled by the trial court.

The appellee replied to the affirmative paragraphs of answer of the appellant in four paragraphs, first in general denial; the second alleging that the policy of insurance sued upon was issued after written application was made by appellee and that such written application contained the following words: "These buildings may be moved on account of railroad back 50 ft."; that appellee informed the agent of appellant that the buildings covered in such policy would be moved on account of the widening of United States Highway No. 31 at Lakeville, Indiana, and that it would be necessary for appellee to remove his goods

from the buildings and the buildings would be unoccupied, and that agent of appellant had advised appellee that the matter would be taken care of in the policy and that the policy would permit the vacancy. By paragraph three of reply, the appellee set forth that one W. Leslie Gunnell, who was appointed by appellant as its appraiser, was not a disinterested appraiser; that he was employed by the appellant in the adjustment of losses and that he was a partisan appraiser who was willing and anxious to serve the insurer and that by his appointment the appellant had waived the provision of the policy relied on in its third paragraph of answer. A demurrer was sustained to the fourth paragraph of reply.

At the trial, the evidence disclosed that on March 5, 1936, the appellee was the owner of two dwelling houses and a garage located upon a tract of land that abutted upon a United States and Indiana State Highway known as No. 31 and the Michigan Road; that he then made written application to appellant for a policy of fire insurance to cover such buildings and certain household furniture and provisions that were located in dwelling house number one; that at such time the State of Indiana had condemned the front fifty feet of such tract of land and it was the intention of appellee to move dwelling house number one back from the highway. That when appellee made the written application for fire insurance, a description of each of the buildings was set forth therein, and at the close thereof, before the signature of appellee, there was typed the following: "These buildings may be moved on account of railroad back 50 ft." Acting on the written application the appellant, on the same day, issued its policy of insurance covering the three buildings and household goods and family provisions located in dwelling number

one. Dwelling number one was insured for $1500 and at that time was occupied by a son of appellee; dwelling number two was insured for $600 and it was occupied by appellee. The garage was insured for $100; the household goods for $300, and the family provisions for $100. The insurance was written for a term of five years, beginning on the 5th day of March, 1936, at an annual premium of $9.10. Appellee had duly paid the premium covering the first two years.

Before the policy was issued, the appellee had moved dwelling number two; and in the spring of 1937, he was preparing to move dwelling number one. The son ceased to occupy the same for living purposes on March 1, 1937, but his household furniture was left therein. The appellee placed some fruit and provisions therein, maintaining a fire therein continuously after March 1, 1937, and was waiting for the ground to settle so that the house could be moved properly when the same and its contents were destroyed by fire on April 22, 1937. At that time the housemover was on the lot with his tools preparing to move the house. Following the fire and within the time provided for by the policy, the appellee made due proof of loss. Within less than a week after the fire, the secretary-treasurer of appellant visited the scene of the fire, learned from appellee that the son had moved out of the house during March and was not occupying the same at the time of the fire. The appellee testified that such officer of appellant notified him that the appellant did not owe him anything under the policy. A short time thereafter, and on April 26, 1937, W. Leslie Gunnell, as an agent and adjuster for appellant, visited the scene of the fire, talked to appellee, learned that appellee's son had moved out of the house on March 8, 1937, and that the house was unoccupied at the time of the loss. Such

adjuster testified that he told appellee that he had no insurance upon the burned property because his insurance contract had been violated. This adjuster was the same person that was appointed later by appellant as its appraiser.

On July 24, 1937, appellant served a written notice upon appellee, which notified him that it had selected W. Leslie Gunnell as a competent and disinterested appraiser to act in its behalf, and requested that he appoint an appraiser as provided for in the policy, and that the two appraisers, and the umpire selected by them, determine the amount of the loss. Such written notice further informed apellee that the appellant did not waive any of its rights in asking for such appraisement, and that it did not admit liability, but continued to deny liability on the ground that the subject-matter of the policy was and had been vacant for a period in excess of ten days at the time of the loss.

Before suit was instituted the appellant mailed appellee a check for $1.37 and also certain endorsements to be attached to the policy reducing the amount of insurance upon the property covered by the policy that had not been destroyed by fire on April 27, 1937. Appellant does not contend that it returned to appellee unearned premiums paid by him on the particular property destroyed by fire. Whether the $1.37 was paid because of reduction in the amount of insurance upon the remainder of the property does not appear, but appellee returned the check therefor to appellant.

The first question for determination is whether, under the evidence, the jury was entitled to determine that the appellant had waived the provision of the fire insurance policy concerning vacancy. The policy provided:

"This entire policy, unless otherwise provided by agreement endorsed thereon or added hereto

shall be void . . . . if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

The appellant admits that it obtained knowledge of the fact that the property had been vacant or unoccupied for more than ten days when it was destroyed by fire, within less than a week after the fire; but it does not contend that when denying liability under the policy, or when it filed its answer claiming a forfeiture because of the violation of the vacancy provision, or at any other time, that it ever returned, or offered to return, the unearned portion of the premium paid by appellee upon the destroyed property. Appellee contends that this establishes a waiver of any rights appellant might have had to claim a forfeiture because of the vacancy provision.

The rule is firmly established that an insurer is precluded from asserting a forfeiture, where, after acquiring knowledge of the facts constituting a breach of a condition, it has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness. While there may be some confusion in our own decisions concerning the legal effect of the retention or collection of premiums by an insurer after knowledge of the breach of a condition precedent or subsequent, we feel that the applicable rules are well and correctly stated by Judge Batman in the case of *Insurance Co., etc.* v. *Indiana Reduction Co.* (1917), 65 Ind. App. 330, 335, 336, 117 N. E. 273. He states the same as follows:

(a). "A provision in a policy of insurance, declaring it void if a prohibited article is kept or used on the premises, means only that it shall be voidable at the election of the insurer on the happening of such event."

(b). "Where such prohibited article is being kept and used on the insured premises at the time of the issuance of such policy and acceptance of the premium therefor, and the insurer knows such fact at the time, it waives the right to declare the policy void on account of such prohibited act."

(c). "If the insurer has no knowledge that such prohibited article is being kept or used on the insured premises at the time of the issuance of such policy, but subsequently discovers such fact, it must tender back, or in some appropriate way restore, or offer to restore, to the insured the premium received therefor, within a reasonable time thereafter, in order to avail itself of such defense, and, upon its failure so to do, it will be deemed to have waived the right to declare such policy void, and to have elected to treat it as a valid contract of insurance."

(d). "This rule is applicable even where the keeping and using of such prohibited article is not discovered until after a loss under such policy has occurred. *American, etc., Ins. Co.* v. *Rosenstein* (1910), 46 Ind. App. 537, 92 N. E. 380; *Brashears* v. *Perry County, etc., Ins. Co., supra,* [(1912), 51 Ind. App. 8, 98 N. E. 889]; *Masonic, etc., Assn.* v. *Beck* (1881), 77 Ind. 203, 40 Am. Rep. 295; *Glens Falls Ins. Co.* v. *Michael, supra,* [(1906), 167 Ind. 659, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708.]"

While the court in the particular case was considering the violation of a condition in the particular policy declaring it void if gasoline should be kept, used or allowed on the particular premises, the principles of law therein set forth would be equally applicable to the provision concerning vacancy that was in the policy in suit.

In the case of *Aetna Insurance Co.* v. *Robinson* (1937), 213 Ind. 44, 53, 10 N. E. (2d), 601, the Supreme Court applies the same principles to a vacancy provision. We quote from the language of the opinion the following:

"There is a provision in the policy to the effect that it shall be void if the property shall be and remain unoccupied and uninhabited for a period of ten days. . . .

"It is settled that a provision in an insurance policy that it shall subsequently become void upon the happening of a certain event, such as the premises becoming vacant, is to be construed as making the policy voidable only upon the happening of the event, at the option of the insurer, and if the insurer desires to exercise the option and rescind the contract, it is required to act promptly, inform the insured of its election, and return, or offer to return, all unearned premiums; and a failure in this respect will be deemed a waiver, and the insurer will be deemed to have elected to waive the right to cancel. An insurer may not retain unearned premiums and at the same time disclaim liability during the period covered by the premiums."

But appellant says that it was not necessary for it to return or offer to return the unearned premium paid upon the destroyed and insured property because this was a mutual company where the contingent liability of the insured was ten times the premium paid and expressed in the policy; that it was unable to determine the amount of appellee's premium liability until the end of the term, which would have been March 5, 1941. The policy contained a clause providing for its cancellation at any time at the request of the insured or by the company by giving five days notice of such cancellation, and it provided that if the policy be cancelled or become void or cease, the premium having been actually paid, the unearned premium should be returned on surrender of the policy or the last renewal. If appellant contracted for the return of unearned premium upon cancellation, we know of no reason why it could not determine the amount of unearned premium

when it exercised its option to declare the policy forfeited because of the violation of a condition subsequent.

In the case of *Farmers Mut. Fire Ins. Co.* v. *Jackman* (1905), 35 Ind. App. 1, 14, 73 N. E. 730, this court declared that in passing upon a question of waiver, the fact that the insurer was a mutual company, and that the insured was a member thereof, furnished no reason for not giving the contract the same force and effect to prevent a forfeiture as would be given a contract issued by a stock company. The rule, that an insurer which with knowledge of facts entitling it to treat a policy as no longer in force, receives and accepts a premium on the policy, is estopped to take advantage of the forfeiture, is applicable to a mutual insurance company which imposes or collects an assessment upon the policy. *Masonic Mutual Benefit Assn.* v. *Beck* (1881), 77 Ind. 203; 29 Am. Jur., Insurance, § 857, p. 653.

A member of a mutual insurance company cannot be legally assessed for losses accruing after the surrender or cancellation of his policy. *Boland* v. *Whitman, Receiver of the Sinnissippi Insurance Company* (1870), 33 Ind. 64; annotation in 53 A. L. R., p. 356, and cases there cited. Upon principle the same rule should be applicable where the insurer exercises an option to declare the policy forfeited because of breach of a condition thereof by the insured, and after such declaration of forfeiture the insurer would not be entitled to make assessments against the insured because of losses thereafter accruing. *Indiana Mutual Fire Insurance Co.* v. *Conner* (1854), 5 Ind. 170. Under such circumstances there is no reason why the insurer could not determine the amount of unearned premiums returnable.

But the appellant urges another reason why it should

not be required to return or tender the return of unearned premium. It states that it did not forfeit the entire policy because of breach of conditions, but that it forfeited the policy only in so far as it covered the property that was destroyed, and that it maintained the policy in force upon all other property described therein.

The question of the divisibility of fire insurance policies is one that has caused much conflict in the decisions of the courts of different states. The rule followed by a number of authorities is that where the amount of insurance under a policy insuring several items is apportioned as to such items, but the premium paid is gross for the entire property insured, the contract is entire, and if void as to part of the property insured is void as to all. 29 Am. Jur., Insurance, § 185, p. 199, and cases cited. In other jurisdictions the rule prevails that where the property insured consists of different items which are separately valued or insured for separate amounts, the contract is divisible, and a breach of warranty or condition as to one item will not affect the insurance on the remainder of the property even though the premium is entire. 29 Am. Jur., Insurance, § 186, p. 200, and cases cited.

But the rule followed in Indiana, and in a great number of other jurisdictions, is one that makes the determination of the divisibility of an insurance contract depend upon the nature and entirety of the risk. Where the property is so situated that the risk on one item cannot be affected without affecting the risk of the other items, the policy must be regarded as entire; but where the property is so situated that the risk on each item is separate and distinct from the risk on the other items, so that what affects the risk on one item does not affect the risk on the others, the policy will be regarded as severable.

*Geiss* v. *The Franklin Ins. Company* (1890), 123 Ind. 172, 24 N. E. 99, 18 Am. St. Rep. 324; *Phenix Ins. Co.* v. *Pickel* (1889), 119 Ind. 155, 21 N. E. 546, 12 Am. St. Rep. 393; *Pickel* v. *Phenix Ins. Co.* (1889), 119 Ind. 291, 21 N. E. 898; *Farmers Mutual Fire Ins. Co.* v. *Olson* (1920), 74 Ind. App. 449, 129 N. E. 234; *Manchester Fire Assurance Co.* v. *Glenn* (1895), 13 Ind. App. 365, 40 N. E. 926, 55 Am. St. Rep. 225; 29 Am. Jur., Insurance, § 187, p. 201.

Under our Indiana decisions this contract of insurance would not be divisible in as far as it affected the dwelling houses and the furniture and family provisions that were located therein. *Pickel* v. *Phenix Ins. Co.*, *supra*, p. 295.

There is another matter connected with this policy entitled to consideration in the determination of the divisibility thereof, and that is the language thereof declaring that,

> "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto shall be void . . . . if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

The decisions of the courts of other states are not agreed as to whether such a clause prevents such a policy from being divisible. See 29 Am. Jur., Insurance, § 188, p. 204, annotations and cases cited. But if a mutual fire insurance policy contains such a clause providing that the entire policy will be void if there is a breach in a matter affecting a part of the property insured thereby, and under the terms of such policy it would not be possible to determine the amount of earned and unearned premium that had been paid upon a portion of the property that

had been destroyed until the close of the entire term for which the insurance had been written, and the particular policy provided for the return of unearned premiums when the policy ceased, then such a policy would not be divisible and the insurer could not properly set up the divisibility thereof as a reason for not returning, or offering to return, the unearned premium upon destroyed property.

We are of the opinion that the evidence herein clearly establishes a waiver by appellant of its right to claim a forfeiture because of violation of the vacancy clause of the policy in question. Such determination makes it unnecessary for us to consider the objections to instructions Nos. 2 and 3. Appellant could not have been harmed by the giving of either.

We cannot agree with appellant in its contention that the trial court erred in permitting the jury to determine, as a fact, whether appellant's nominee as appraiser under the appraisal and arbitration clause of the policy was disinterested.

Unless there is no evidence on the question, or the evidence is undisputed and of such a character that but one inference can be drawn therefrom, questions of fact relating to appraisal or arbitration are generally for the jury to determine, such as the question of whether there was such a disagreement as to authorize an arbitration, whether an appraisal was demanded within a reasonable time or in good faith,.whether an appraisal or arbitration had been waived, and whether an appraiser appointed was competent to act as being disinterested. 26 C. J., Fire Insurance, § 768, p. 552; *Providence Washington Ins. Co.* v. *Wolf* (1907), 168 Ind. 690, 702, 80 N. E. 26, 120 Am. St. Rep. 395; *National Fire Ins. Co.* v. *O'Bryan* (1905), 75 Ark. 198,

87 S. W. 129; *Bradshaw* v. *Agricultural Ins. Co.* (1893), 137 N. Y. 137, 32 N. E. 1055.

In the case of *Insurance Co. of North America* v. *Hegewald* (1904), 161 Ind. 631, 639, 66 N. E. 902, the court says:

"It is certainly essential in order to render a person competent as an arbitrator in a disputed matter, that he be disinterested and also impartial. In fact, the authorities assert that bias and strong partiality on the part of one or more of the appraisers constitute a serious objection to the award made in a matter of arbitration. *Bash* v. *Christian*, 77 Ind. 290; Morse, Arbitration, 534; *Bradshaw* v. *Agricultural Ins. Co.*, 137 N. Y. 139, 32 N. E. 1055. Appraisers in cases like the one at bar are considered as acting in a *quasi* judicial capacity, and in discharging their sworn duties they must act free from bias, partiality, or prejudice in favor of either of the parties. *Flatter* v. *McDermitt*, 25 Ind. 326; *Hickerson & Co.* v. *Insurance Co.*, 96 Tenn. 193, 33 S. W. 1041, 32 L. R. A. 172.

"In the appeal of *Bradshaw* v. *Agricultural Ins. Co.*, *supra*, the New York court of appeals held that the term 'disinterested' does not simply mean an absence of pecuniary interests on the part of the appraiser, but requires that he be one not biased or prejudiced in the matter of the loss."

While prior service of an appraiser does not disqualify him as a matter of law, the fact that such appraiser had previously been employed by either the insurer or the insured is a circumstance that may properly be considered in determining whether he is disinterested. Previous service, together with other circumstances, may disqualify. *Firemen's Fund Ins. Co.* v. *Flint Hosiery Mills, Inc.*, *Homeland Ins. Co.* v. *Flint Hosiery Mills, Inc.* (1935), 74 F. (2d) 533, 104 A. L. R. 556 and annotation beginning on page 563.

The evidence showed that W. Leslie Gunnell, who appellant designated as its appraiser, had previously been employed by it to adjust fire losses. It also showed that appellant employed him immediately after the particular fire to adjust the loss here involved, and that he, as an employee of appellant, within a week following the fire made an investigation to determine whether the policy had been violated and formed a conclusion that it had.

The court properly permitted the jury to determine, as a fact, whether the appraiser appointed by appellant was disinterested.

In view of our determination concerning waiver, it is not necessary to consider appellant's claim that the verdict of the jury was not sustained by sufficient evidence. This claim is founded upon the contention that there was no evidence to sustain waiver of the vacancy clause of the policy.

The judgment of the trial court is affirmed.

NOTE.—Reported in 40 N. E. (2d) 401.