20 So.2d 851

**CONTINENTAL ASSUR. CO. v. HENDRIX.**

6 Div. 241.

Supreme Court of Alabama.

Jan. 11, 1945.

Rehearing Denied March 1, 1945.

London & Yancey and Chas. W. Greer, all of Birmingham, for appellant.

Graham, Bibb & Wingo, of Birmingham, for appellee.

**GARDNER, Chief Justice.**

Plaintiff, a practicing physician about forty years of age, seeks to recover of the defendant insurance company the sum of $200 per month over a given period of time for disability due to sickness, resulting in a total loss of all of his business time during that period, as provided in the insurance policy upon which this action is founded. The policy expressly provided that it did not cover disability resulting wholly or partially, directly or indirectly, from injury or sickness contracted while the insured was in the military or naval service in time of war. Aside from the general issue, there were numerous special pleas, and a number of replications thereto. The cause was submitted to the jury, resulting in a verdict and judgment for plaintiff, from which the defendant prosecutes this appeal.

Though the record is voluminous and has been read with care, we are persuaded that discussion here may well be brought within narrow limits. There were a number of special pleas relying upon misrepresentations on the part of plaintiff as to his earnings, as well as having other like insurance. To these special pleas plaintiff interposed a number of replications, among them Replication 6, which to our minds presents the most serious question on this appeal. A demurrer to this replication, based upon numerous grounds, was interposed and overruled. This presents the first question here for consideration, and for convenience Replication 6 will appear in the report of the case.

This replication is based upon the well-accepted theory that, where an insurer denies liability for a loss on one ground, at the time having knowledge of another ground of forfeiture, he cannot thereafter insist on such other ground if the insured has acted on its asserted position and incurred prejudice or expense by bringing suit or otherwise. 29 Am.Jur. p. 667; Liverpool & London & Globe Ins. Co. v. McCree, 213 Ala. 534, 105 So. 901; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; Bankson v. Accident & Cas. Co., 244 Ala. 371, 13 So.2d 398; Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537.

We are of the opinion the replication is insufficient, as stating the mere conclusion or opinion of the pleader without the averment of sufficient facts upon which to base such conclusion. Speaking of a special plea interposed in Nashville, C. & St. L. Ry. Co. v. Parker, 123 Ala. 683, 27 So. 323, 326, and declaring it insufficient, the Court observed: "It gave no facts by which the court could determine the validity of the contract, or the correctness of the construction placed upon it by the pleader, or how or in what manner anything done or omitted to be done under 'the contract' could affect or vary the rights of the parties."

And speaking of a replication to a plea in Thomas v. Irvine, 171 Ala. 332, 55 So. 109, 110, the Court held it insufficient for failure to set out the terms of the contract, at least in substance, the opinion stating: "The averment of this replication in reference to the contract was but a statement of the pleader's conclusion."

The case of Norwich Union Fire Ins. Society v. Prude, 156 Ala. 565, 46 So. 974, is to like effect. And we think the objection of the courts to a mere conclusion of the pleader as to the contents of a written instrument, rather than the statement of the facts as to its contents, is demonstrated as well-founded by the allegations appearing in this replication. Illustrative is the averment that in the letter in question (bearing date August 10, 1942) the defendant refused to pay on the ground that it could not accept the decision of the Army Retiring Board. Yet later in the replication, it appears that in the identical letter the defendant "stated in substance that it should be furnished with further evidence which would need deal with facts relating to the onset and development of the disability."

To our minds it is clear enough that a statement by the defendant company that it could not accept the finding of the Retiring Board, coupled with a suggestion that further evidence of facts should be produced relating to the onset and development of the disability alleged, could not properly be interpreted as a denial of liability. That question, by the very terms of the letter, was left open. Speaking of an implied waiver of a legal right, the author, in Sec. 821, Vol. 4, Couch's Cycl. of Ins. Law, used the expression: "There must be a clear, unequivocal, and decisive act showing a purpose or intention to

waive, or the acts or conduct relied upon must involve some element of estoppel."

Our authorities do not appear to use this exact language. Yet, in effect, such is the holding of our decisions. Illustrative is the case of Liverpool & London & Globe Ins. Co. v. McCree, supra [213 Ala. 534, 105 So. 903], where is the expression "definite denial of liability," as disclosed by the following sentence: "The pleas of waiver and estoppel can be predicated on this definite denial of the existence of the contract."

Generally speaking, however, our authorities merely refer to a "denial of liability." Certainly, it was not intended by any of the authorities to so hamper correspondence between the insurer and the insured as to subject the insurer to a forfeiture of legal rights when seeking only more proof upon the question of the policy's coverage, and attempting to ascertain the true state of affairs.

Plaintiff had been in the U. S. Army, with the rank of captain, for more than a year when he first wrote the defendant, on February 3, 1942, merely giving notice that he was admitted to the Camp Davis Hospital on February 1, 1942. He gave no indication of the cause of his disability, its nature, or when it arose; and on February 24, 1942, he wrote the defendant that his regiment had been moved, and that he was a patient of the station hospital, Camp Davis, North Carolina, and declaring that under the terms of his policy, he was entitled to pay for hospitalization. Still there was no indication of the nature, or the extent, or the cause of the disability, nor did the letter intimate when the disability began. It was reasonable that the insurance company should first desire information, not only as to the nature of the illness, but also as to its origin. The matter of the "onset and development" of the illness was one of great importance to the company under the express terms of the policy contract.

It was not until June 3, 1942, that plaintiff indicated in his correspondence that the disability began before his active military service began. In this letter he states that he enclosed a complete file of his case history. This case history to which he referred was a document purporting to be the proceedings of an Army Retiring Board, with minute details, all of which appear to embrace some eight pages of this transcript. The details need not be here

related, but with it all, we are unable to find any statement showing upon what proof the findings of the Retiring Board were based, other than the fact that plaintiff himself appeared before the Board and was examined by some of its members. The Board found that he was incapacitated on account of "psychoneurosis, anxiety state with depression, severe, cause undetermined; that the incapacity originated prior to entrance upon active duty and existed at the time of entrance on active duty, January 5, 1941."

The Board further found "that the incapacity is not an incident of the service and that it is permanent." We may add by way of explanation that plaintiff insisted and offered proof to show that his trouble was what is medically termed psychoneurosis, but what (we may add) is generally understood by the layman as being a severe case of nervous breakdown; and further, that the origin of his trouble dated back to 1938 to the loss of his only child. On the other hand, defendant contested these issues, with particular emphasis upon the origin of the illness, insisting that it originated after his entry into the service and was the result thereof. This letter with these documents were offered in evidence over defendant's strenuous objection.

Further correspondence was offered and admitted over objection, consisting of a letter by plaintiff's counsel, dated July 21, 1942, directed to the defendant company, which goes into a rather full statement of the history of plaintiff's case, particularly as found by the Army Retiring Board, upon which great stress is laid in the letter, and all of which is placed in most favorable light for the plaintiff.

In this letter the defendant company is also informed that the U. S. Government had declined to pay the plaintiff any retirement pay because of the result of the finding of the Army Retiring Board, to the effect that his illness originated prior to his induction into the service. The letter further states that, for fear the defendant had not received a copy of all these communications from the War Department, a copy of the same are enclosed. The letter goes still further, and informs the defendant that their representative, Mr. Saghorn, had discussed with plaintiff on two or three occasions, suggesting a lump sum settlement, but that plaintiff declined to make such a settlement, preferring to receive the monthly indemnity in accord-

ance with the terms of the policy. In the letter it was offered that further examination of the plaintiff be had if so desired. The introduction of this letter carried with it the enclosures referred to, all concerning the disposition of the case by the Retiring Board and by the War Department, including an order by the Secretary of War to the effect that, as plaintiff's incapacity was not incurred in line of duty while on active duty, he was not entitled to retirement pay benefits.

The defendant, on July 31, 1942, wrote the attorneys for the plaintiff acknowledging receipt of their letter, with attached papers covering the action of the Army Retiring Board. This letter insisted that the statement of the Board to the effect the incapacity was not an incident to the service is not sufficient proof, and that no evidence is presented to show upon what this conclusion is based, but all the circumstantial evidence indicates to the contrary. The letter concluded as follows: "We believe you will agree that if the company is to change its conclusion, it will need to be on the basis of evidence that has not yet been submitted."

Plaintiff's attorneys, on August 5, 1942, replied to this communication, referring to the declination on the part of defendant to accept the decision of the Retiring Board, and the conclusion of the "Army Medical Examiners who observed and examined Captain Hendrix and testified regarding his disability before the Army Retiring Board." The letter then refers to the statement of the defendant that if the conclusion it has reached is to be changed, it will have to be on the basis of evidence not yet submitted, and offers to submit the plaintiff to examination by a physician located reasonably near to his home. The letter concludes by a suggestion that some idea be given of what further proof would be required for a change of the defendant's conclusions in this matter.

It was following all of this that the defendant, on August 10, 1942, addressed to the attorneys for the plaintiff the following communication, which forms the basis of the waiver set up in plaintiff's Replication No. 6. The letter reads:

"#26459
"Clive Vernon Hendrix
"Gentlemen:

"We have received your letter of August fifth.

"Not knowing what evidence there may be, we scarcely are in a position to suggest what is to be submitted. The evidence, of course, would need to deal with the facts relating to the onset and development of the disability. An examination at the present time would be informative as to the degree of disability now existing, but would not disclose anything as to its commencement. We cannot accept the decision of the Army Retiring Board when there is nothing at all to show on what the decision was based.

"Very truly yours,
"A. G. Frankhauser,
"Claim Department."

As will be noted, the defendant informed the attorneys in this communication that the evidence desired would need to deal with the facts relating to the onset and development of the disability. That fact was a vital factor in the defendant's defense, for it was strenuously insisted that his illness did not have its origin prior to his entry into the service. Plaintiff offered proof to the contrary, and this was evidently a warmly contested issue before the jury. It was a jury question pure and simple. But it is clear enough that for a fair and impartial consideration of that question the jury should be free from any influence of a finding of an Army Retiring Board.

■ We are fully persuaded that the defendant was within its rights in declining to accept as a final conclusion the finding of such a Board. We know of no rule of law by which its rights could be so conclusively determined. The defendant had no part in the Retiring Board proceedings, and so far as the defendant was concerned, it was wholly an ex parte examination. The letters offered in evidence, as to which we have referred, together with these proceedings, very clearly prejudicially affected defendant's case before the jury. The learned trial judge, as we read this record, let all of this proof in upon the theory that it was proper in support of Replication 6.

But as we read the letter of August 10th above noted, upon which Replication 6 is based, it is nothing more than a declination on the part of the defendant to accept the decision of the Army Retiring Board as conclusive upon it, especially in view of the fact that nothing is made to appear to disclose upon what that decision was based. As to the offer of examination, the letter merely states that an examination at the present time would be informative as to the degree of disability now existing, but

would not disclose anything as to its commencement.

And in answer to the inquiry contained in the letter of counsel for plaintiff as to what evidence would be necessary, the defendant's communication expressly states that the evidence, of course, would need to deal with the facts relating to the onset and development of the disability. The sum and substance of this communication is simply to the effect that, the insistence of plaintiff's counsel that the defendant be bound by the conclusion of the Army Retiring Board as to the onset and development of the plaintiff's illness is unreasonable and cannot be accepted, but that other and independent proof should be offered in that connection. And all the correspondence discloses that no offer of other proof was made, though such proof was introduced at the trial. Plaintiff was persisting in having the finding of the Retiring Board considered final and conclusive of the whole matter.

We cannot read the letter of August 10th as a definite denial of liability. It opens the door for the plaintiff to present proof, but it does decline to accept the conclusions of the Retiring Board. This, we think, the defendant had a right to do.

The discussion here indulged with reference to the numerous letters and exhibits offered in support of Replication 6 is for the purpose of demonstrating the correctness of the principle that the conclusion of the pleader cannot be accepted, but that sufficient facts should be alleged to show a waiver, and to demonstrate the further fact of the prejudicial effect of the ruling of the court in overruling the demurrer to this replication by admitting in evidence the matters herein referred to, which, no doubt, were duly stressed before the jury.

In view of the conclusion reached as to the insufficiency of Replication 6, the suggestion of counsel for plaintiff that the proceedings of the Army Retiring Board were considered as applicable only for the purpose of proving said replication need not be considered. We may add, however, that all this evidence does not appear to have been offered for any limited purpose, though it clearly appears from the statements made from the bench and the discussions which followed introduction of this proof that the trial judge was of the opinion the evidence was admissible in proof of Replication 6.

We find, however, in the oral instructions no limitation as to the effect of this evidence. We think it needs no discussion to disclose that all of this character of proof was inadmissible as evidence in the case unless, as the trial court concluded, it was admissible in support of Replication 6. And as it was so considered by the court, counsel for defendant sought to limit its effect to such replication. Assignment of Error No. 4 complains of the refusal of the following charge, duly requested in writing: "CC. I charge you, that the findings of the Army Board is not evidence of the facts recited therein or the conclusion stated and I further charge you that you cannot consider the Army Board's report offered in evidence, as evidence in the case of the truth of either the facts or the conclusions set out therein." This charge was intended to limit the effect of the findings of the Board, and it would seem that its refusal was error.

There is some suggestion in brief that all these proceedings were admissible upon the theory of proof of loss. The policy here in question did not make proof of loss a condition precedent to recovery. When such is the case, failure of proof of loss must be specially pleaded. New York Life Ins. Co. v. Turner, 213 Ala. 286, 104 So. 643; Manhattan Life Ins. Co. v. Verneuille, 156 Ala. 592, 47 So. 72. There was no plea submitting any such question to the jury, and it was not an issue in the case.

What has been said should suffice for another trial. For the errors indicated let the judgment be reversed and the cause remanded.

Reversed and remanded.

BROWN, LIVINGSTON, and SIMPSON, JJ., concur.