In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2483

ESTATE OF WAVIE LUSTER
 by its personal representative,
 Rick Gikas,

*Plaintiff-Appellant*,

*v.*

ALLSTATE INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:07-CV-226-RLM—**Robert L. Miller, Jr.**, *Judge*.

ARGUED DECEMBER 4, 2009—DECIDED MARCH 23, 2010

Before POSNER, RIPPLE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.  This diversity suit for breach of an insurance contract was dismissed on summary judgment. The suit is governed, so far as the substantive issues are concerned, by Indiana law, and the plaintiff's appeal presents issues of both contract interpretation and Indiana insurance law.

Mrs. Luster was a widow living alone in her house in Merrillville, Indiana. She had a homeowner's insurance policy from Allstate. In October 2001, when she was 83, she was injured in a fall and after being released from the hospital moved into an extended-care facility. She executed a power of attorney to her lawyer, Rick Gikas, who is the representative of her estate in this litigation. She never returned home, and died in April 2006, some four and a half years after her fall. Gikas had notified Allstate of his power of attorney and had directed the company to bill the insurance premiums to his law office. No one lived in the house after she left it.

Three months after her death—her house still unoccupied—a fire caused extensive damage. Gikas submitted a claim on behalf of the estate. An investigation indicated that the fire may well have been started by burglars, but the plaintiff denies this and the district judge made no finding.

In the course of the investigation Allstate discovered that the house had been unoccupied for four and a half years before Mrs. Luster's death, and denied the claim, precipitating this suit. Allstate continued billing Gikas for premiums, however, and he continued paying them until October 2008, more than two years after the fire, when Allstate—which claims not to have known that the policy was still in force until its lawyers read the estate's summary-judgment brief that month—purported to cancel the policy retroactively to November 2001, and returned the premiums for the subsequent period to the estate.

The appeal requires us to consider four provisions of the insurance policy:

> 1.  The insured "must . . . inform [Allstate] of any change in title, use or occupancy of the residence premises."

> 2.  "If [the insured] die[s], coverage will continue until the end of the premium period for . . . [the insured's] legal representative while acting as such."

> 3.  There is no coverage for loss to property "consisting of or caused by . . . any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person."

> 4.  There is no coverage for loss to property "consisting of or caused by . . . vandalism or malicious mischief if [the insured's] dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief," unless the dwelling is under construction.

1. Gikas didn't notify Allstate until after the fire that the house was unoccupied. He argues that the notice he gave Allstate, shortly after Mrs. Luster left the house for good—that he had a power of attorney and premiums should be billed to his office—gave the insurance company constructive notice that the house was unoccupied, or at least obligated the company to inquire about its occupancy. That is a frivolous argument. Allstate knew that Luster was 83, so it would come as no surprise to learn that she had executed a power of attorney and that the holder of the power would be

handling her finances. That did not indicate that she'd moved out of the house.

Alternatively, Gikas argues that anyway the house was *not* unoccupied, because right up until her death Luster expressed the intention of returning to live there when her health permitted. "Occupancy" in Indiana law (as in insurance law generally) implies "the presence of human beings as at their customary place of abode, not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage," *Home Ins. Co. v. Boyd*, 49 N.E. 285, 291 (Ind. App. 1898). "A person's dwelling constitutes not the boundaries but the focal point of his life. He does not cease to have a home when he is temporarily absent therefrom, nor does his home cease to be an occupied dwelling. It is not his physical presence but the habitual recurrence of that presence that renders a dwelling occupied." *Foley v. Sonoma County Farmers' Mutual Fire Ins. Co.*, 5 P.2d 1, 3 (Cal. 1941) (Traynor, J.); see also 6A *Couch on Insurance* §§ 94:118-19 (3d ed. 2005).

But though there is no "require[ment] that some person must be living in [the house] every moment, . . . there must not be a cessation of occupancy for any considerable period of time." *Insurance Co. v. Coombs*, 49 N.E. 471, 473 (Ind. App. 1898). Most of the cases in which the insured prevails involve absences of no more than three months. *Monarch Ins. Co. v. Rippy*, 369 P.2d 622, 624-25 (Okla. 1962); *Republic Ins. Co. v. Watson*, 70 S.W.2d 441, 443-44 (Tex. Civ. App. 1934); *Phoenix Ins. Co. v. Burton*, 39 S.W. 319 (Tex. Civ. App. 1896). The insurer tends to win when the absence is longer and the owner's plans to return

are uncertain or indefinite, as in *Schoeneman v. Hartford Fire Ins. Co.*, 267 P. 815 (Ore. 1928), where the insured's farm was unoccupied for two years and the owner intended to return only when he could "see [his] way clear to make the payments on the debt that was still against it, pay the interest and the taxes and keep up the place, and eventually that way get it paid for." The present case is similar; the insured was away for years, and her intention to return was conditional on improving health that, as the years rolled by, became less and less probable. See also *Speth v. State Farm Fire & Casualty Co.*, 35 P.3d 860, 864 (Kan. 2001); *Stivers v. National Am. Ins. Co.*, 247 F.2d 921, 924-26 (9th Cir. 1956) (California law); *Washington Fire Ins. Co. v. Cobb*, 163 S.W. 608, 614 (Tex. App. 1914).

Regardless of the owner's intentions, a house that stands unoccupied for four and a half years can hardly be described as "occupied" throughout that period, particularly when one considers the risk of theft, vandalism, fire, water damage, and so forth when a house is left empty for years on end. We need not try to pinpoint the date on which, regardless of the owner's intentions, a house has to be considered to have undergone a "change in . . . occupancy" within the meaning of the policy, triggering the duty of the insured (or, in this case, her representative) to notify the insurance company. Four and a half years of continuous absence of human occupation constitutes a change in occupancy.

The duty-to-notify provision entitled Allstate to cancel the policy in the event the house became unoccupied. Yet while arguing compellingly that Gikas had a duty to notify it that the house was unoccupied, Allstate

is seeking to avoid coverage only on the basis of clauses 3 and 4 of the policy. The district judge, who found that the duty of notification had indeed been breached, attached no consequences to that breach but instead based his decision on clause 3. (We'll see later in this opinion that the issue of cancellation is raised mainly by the plaintiff, as presenting an alternative ground for recovery.)

Although the policy expressly authorizes the insurer to cancel it for a violation of any of its terms, it also requires the insurer to give 30 days' notice of intention to cancel, and Allstate failed to do that after discovering in the wake of the fire that the house had been unoccupied for years. The requirement of notice of intent to cancel is important; it gives the insured an opportunity to prevent a lapse of coverage, by taking steps to reinstate the policy or obtain a substitute policy from another insurer. *Conrad v. Universal Fire & Casualty Ins. Co.*, 686 N.E.2d 840, 842 (Ind. 1997); *Krueger v. Hogan*, 780 N.E.2d 1199, 1203 (Ind. App. 2003). Retroactive termination is inconsistent with the requirement of advance notice. *Plumlee v. Monroe Guaranty Ins. Co.*, 655 N.E.2d 350, 355-56 (Ind. App. 1995); *Green v. J.C. Penney Auto Ins. Co.*, 722 F.2d 330, 332-33 (7th Cir. 1983) (Illinois law).

It might be argued that the duty to notify the insurer of a change in occupancy is a condition the breach of which cancels the entire policy. But the remedy of cancellation ("rescission" is the technical legal term) must be sought by the wronged party, and Allstate did not seek to cancel the policy when it learned of the change in occupancy. The insured's actions cannot by themselves void

the contract. *Prudential Ins. Co. v. Smith*, 108 N.E.2d 61, 64 and n. 3 (Ind. 1952); *New Life Community Church of God v. Adomatis*, 672 N.E.2d 433, 438 (Ind. App. 1996). It would be paradoxical to allow the wrongdoer's action to deprive the victim of the opportunity to sue for damages for breach or take other action that might be better from the victim's standpoint than rescinding the contract. "The contract is voidable at the election of the injured party. If he elects to affirm the transaction, he has his remedy by way of damages. If he elects to rescind, he must return back what he has received, and in turn he is entitled to receive what he has parted with." *Prudential Ins. Co. v. Smith*, *supra*, 108 N.E.2d at 64. Rather than attempt to cancel the policy, Allstate, the party claiming to have been injured or wronged by the change of occupancy of which it had not been notified, accepted premiums for years after learning of the estate's breach. It cannot now be permitted to rescind the contract *ab initio*—that would be a confession that it should not have accepted the premiums.

It is not even clear that a change in occupancy is the kind of breach of contract that would entitle Allstate to rescind the policy. The Indiana cases limit rescission to breaches that go "to the heart of the contract," *Collins v. McKinney*, 871 N.E.2d 363, 371 (Ind. App. 2007); *Gabriel v. Windsor, Inc.*, 843 N.E.2d 29, 45 (Ind. App. 2006), or that result in a "complete failure of consideration." *Smeekens v. Bertrand*, 311 N.E.2d 431, 435 (Ind. 1974); *Van Bibber Homes Sales v. Marlow*, 778 N.E.2d 852, 860 (Ind. App. 2002). Damages are the default remedy for breach of contract; injunctive and other relief, including rescission—an equitable remedy and thus similar to an injunction, *Seymour*

*Water Co. v. City of Seymour*, 70 N.E. 514, 517 (Ind. 1904); *Stevens v. Olsen*, 713 N.E.2d 889, 891 (Ind. App. 1999); see *Collins v. McKinney*, *supra*, 871 N.E.2d at 371; *New Life Community Church of God v. Adomatis*, *supra*, 672 N.E.2d at 438—is reserved for extraordinary cases, such as a complete failure of consideration, which excuses the performing party from having to perform, because he's receiving nothing in return. When one considers the very limited circumstances in which the Indiana legislature has approved cancellation of homeowner policies even when there is notice by the insurer, see Ind. Code § 27-7-12-6, as there was not here, it seems unlikely that the Indiana courts would permit cancellation in a case like ours.

2. The plaintiff argues that even if coverage lapsed, the death clause reinstated it, because Luster died before the fire. The argument misunderstands the purpose of the clause. It is to prevent a lapse of coverage when the insured dies. If coverage had lapsed earlier, the clause has no significance.

3. The district judge ruled that leaving the house unoccupied constituted a "substantial change or increase in hazard" within the meaning of clause 3 (no coverage for loss to property "consisting of or caused by . . . any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person"). The judge seems to have thought that to leave a house unoccupied for however short a time causes an "increase in hazard" as a matter of law. Allstate takes the more moderate position that any gap

in occupation of more than 30 days increases hazard as a matter of law.

Neither position is correct. Houses are rarely occupied continuously. A homeowner might take a 31-day trip; Allstate implies that if a fire occurred during that period the insured would be uncovered. That is not the law. (In addition to the cases we cited earlier, see *Hill v. Ohio Ins. Co.*, 58 N.W. 359 (Mich. 1894).) A person who owns a vacation home may spend the summer months away from his primary home; the homeowner's policy on his primary home doesn't lapse. See *Farmer's Mutual Protective Ass'n v. Wright*, 702 S.W.2d 295 (Tex. App. 1985); cf. *Ohio Farmers' Ins. Co. v. Vogel*, 76 N.E. 977, 979 (Ind. 1906) ("a condition against vacancy and unoccupancy, usually found in insurance policies, must be construed with relation to the character or class of property to which it relates"). What is true is that a homeowner's policy is site-specific; a homeowner who has a second (or a third or a fourth, etc.) home will have either to add each one as an endorsement to the homeowner's policy on his primary home or buy a separate policy covering his other home(s).

Allstate's argument thus implies that if you have a second home the homeowner's policy on your primary residence is illusory; you're away a lot and so coverage lapses. That's nonsense. And even if the house is unoccupied in the relevant sense—the sense that triggers the duty to notify the insurance company of a change in occupancy—it doesn't follow that you have created a "substantial . . . increase in hazard." Maybe you fitted the

house with an array of locks and alarms and hired a security company to check on the house daily and so made the house more secure than when you were living there—an especially plausible inference if you happen to be an elderly person who might if in residence damage it inadvertently by leaving appliances on or failing to remove combustibles like cans containing paint or oil-soaked rags or to attend to defects in the electrical wiring of the house. There is no rule that moving out of a house per se increases the hazards against which the insurance company has insured you. *Smith v. Peninsular Ins. Co.*, 181 So. 2d 212, 214 (Fla. App. 1965); cf. *German Fire Ins. Co. v. Stewart*, 42 N.E. 286, 288 (Ind. App. 1895).

The court in *Kinneer v. Southwestern Mutual Fire Ass'n*, 185 A. 194, 195 (Pa. 1936), did say that "it is a matter of common knowledge that there is more danger of an unoccupied house being destroyed by fire than of one occupied." But this is in general rather than in every case. To make it a flat rule of law would be inconsistent not only with the cases but also with the language of the insurance policy. That clause 3 was not intended to create a conclusive presumption of increased hazard after 30 days of nonoccupancy is confirmed by clause 4, which excludes coverage for loss caused by vandalism or mischief committed more than 30 days after the house became unoccupied. Were there an automatic inference of greater hazard when a house has been empty for 30 days, there would be no need specifically to exclude loss caused by vandalism or mischief, as distinct from other loss-causing events, such as fire. Allstate has in effect merged provisions 3 and 4 into a rule that any

break of more than 30 days in continuous occupancy voids the policy. That's rewriting the policy.

4. There may well have been vandalism, by burglars, and if so it occurred more than 30 days after the house became unoccupied, whenever precisely occupancy ceased—sometime during the four and a half years between Luster's fall and her death. But we do not know whether the vandalism caused the loss—there is no judicial finding that the fire that was the immediate cause of the loss was the result of vandalism. To decide whether it was will require an evidentiary hearing, as will Allstate's alternative ground that nonoccupancy substantially increased the risk of loss.

So the plaintiff is entitled to a remand, but it wants more and argues that Allstate waived denial of coverage by continuing to collect premiums for more than two years after learning, when the fire occurred, that the house had long been unoccupied. Eventually, as we know, it did return all the premiums that it had collected since 30 days after Luster had moved out of the house. Allstate's argument that it did not receive notice that the policy was in force because its employee in the claims department whom Gikas advised of Luster's death failed to relay the information to the responsible department in the company fails; the information was properly provided and Allstate's careless handling of it cannot be charged to the Luster estate's account. See *Madison County Bank & Trust Co. v. Kreegar*, 514 N.E.2d 279, 281 (Ind. 1987); *Sunnyside Coal & Coke Co. v. Reitz*, 43 N.E. 46, 49-50 (Ind. App. 1896); *Cange v. Stotler & Co.*, 826

F.2d 581, 592 n. 8 (7th Cir. 1987) (Illinois law); *Prudential Ins. Co. v. Saxe*, 134 F.2d 16, 31 (D.C. Cir. 1943).

Allstate's delay in returning the premiums was not a deliberate attempt to keep money that Gikas had paid  on behalf of Luster under the assumption that the insurance policy was in force (which in fact it was). In any event the delay does not bar Allstate from denying coverage of the loss caused by the fire. Although Allstate concedes that it was obligated to return all the premiums that it had collected after it cancelled the policy, *Bushnell v. Krafft*, 183 N.E.2d 340, 343 (Ind. App. 1962); *Aetna Ins. Co. v. Robinson*, 10 N.E.2d 601, 605 (Ind. 1937); *Arkwright-Boston Mfrs. Mutual Ins. Co. v. Calvert Fire Ins. Co.*, 887 F.2d 437, 441 (2d Cir. 1989) (North Carolina law); 6A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4189, pp. 578-85 (1972), the premise of the concession is that it *did* cancel the policy, retroactively to long before the fire occurred, and we said earlier that retro-active cancellation is not possible.

Continued acceptance of premiums after cancellation can, as we also said, fool the insured into thinking he's covered and therefore deflect him from seeking sub-stitute protection. And if as a result of being deceived in this way he fails to obtain substitute coverage and incurs a loss as a result, the company is estopped to deny cover-age. *Home Ins. Co. v. Strange*, 123 N.E. 127, 129 (Ind. App. 1919); *Sur v. Glidden-Durkee*, 681 F.2d 490, 493-94 (7th Cir. 1982) (Indiana law); see also *Hargis v. United Farm Bureau Mutual Ins. Co.*, 388 N.E.2d 1175, 1179 (Ind. App. 1979); *C.A. Enterprises, Inc. v. Employers Commercial Union Ins. Co.*,

376 N.E.2d 534, 536 (Ind. App. 1978). But since Allstate could not cancel the policy retroactively, it remained in force until October 2008, when Allstate cancelled it prospectively, as the policy permitted it to do. So during that period the Luster estate remained covered by the policy except (because the house continued to be unoccupied) for losses attributable to an increase in hazard by reason of nonoccupancy, or to vandalism. The coverage was not as comprehensive as it would have been had the house not been unoccupied; but that was not Allstate's fault. Insurance coverage is not illusory just because the insured has done something to bring himself within an exclusion. That is why an insurer doesn't have to return premiums for the period in which the insurance policy is in force even if an exclusion (or exclusions) is (are) in effect and the policy is later cancelled. *Red Men's Fraternal Accident Ass'n of America v. Rippey*, 103 N.E. 345, 347 (Ind. 1913); *Continental Life Ins. Co. v. Houser*, 89 Ind. 258, 260 (Ind. 1883); *Aetna Life Ins. Co. v. Doerr*, 115 N.E. 700, 703 (Ind. App. 1917). Allstate did the estate a favor by returning the premiums.

Since Gikas knew from the beginning that the house was unoccupied and knew that a change in occupancy within the meaning of the policy could eliminate Allstate's liability under the vandalism and increase-in-hazard exclusions, there is no basis for estopping Allstate to deny coverage. *Ticor Title Ins. Co. v. Graham*, 576 N.E.2d 1332, 1337 (Ind. App. 1991); *Johnson v. Payne*, 549 N.E.2d 48, 51-53 (Ind. App. 1990). The doctrine of estoppel bars a person from enforcing a legal right only if enforcing it would give him a benefit to which he is not entitled. E.g., *Brown v. Branch*, 758 N.E.2d 48, 51-52 (Ind. 2001); *Employers*

*Ins. v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1027-28 (Ind. App. 1999); *Steuernagel v. Supreme Council of Royal Arcanum*, 137 N.E. 320, 322-23 (N.Y. 1922) (Cardozo, J.). There is no suggestion that an Allstate agent said something to Luster or Gikas to suggest that the company wouldn't rely on the vandalism or increase-in-hazard exclusions.

Some Indiana cases speak of an "implied waiver" rather than of estoppel, see, e.g., *Tate v. Secura Ins.*, 587 N.E.2d 665, 671 (Ind. 1992); and generally a waiver is enforceable without regard to prejudice or wrongful conduct. *Johnson v. Spencer*, 96 N.E. 1041, 1043 (Ind. App. 1912); *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). But that is because "waiver" in normal legal usage is a voluntary relinquishment of a known right, *Indiana State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1019 (Ind. 1998); *T-3 Martinsville, LLC v. US Holding, LLC*, 911 N.E.2d 100, 116 (Ind. App. 2009); cf. *United States v. Olano*, 507 U.S. 725, 733 (1993), rather than an accidental, though perhaps careless, failure to assert a right. The latter type of failure is a forfeiture, *United States v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001), and is often excused if no prejudice results. E.g., *Lander Co. v. MMP Investments, Inc.*, 107 F.3d 476, 479-80 (7th Cir. 1997); *Lorenzen v. Employees Retirement Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 232-33 (7th Cir. 1990).

An "*implied* waiver" is neither waiver nor forfeiture; in Indiana insurance law it is a synonym for estoppel and so requires proof of reliance. *Tate v. Secura Ins.*, *supra*, 587 N.E.2d at 671; *Summers v. Auto-Owners Ins. Co.*, 719

N.E.2d 412, 414-15 (Ind. App. 1999); *United Services Automobile Ass'n v. Caplin*, 656 N.E.2d 1159, 1162-63 (Ind. App. 1995). Pennsylvania has a similar rule. *Goodwin v. Hartford Life Ins. Co.*, 491 F.2d 332, 333 n. 1 (3d Cir. 1974) ("under Pennsylvania law an implied waiver exists only when the elements of an estoppel are present . . . . [T]he two doctrines have precisely the same requirements"). In most states, it is true, implied waiver is a confusing hybrid of waiver and estoppel. *Tibbs v. Great Central Ins. Co.*, 373 N.E.2d 492, 493 (Ill. App. 1978); *Continental Assurance Co. v. Hendrix*, 20 So. 2d 851, 853-54 (Ala. 1945); *Schwab v. Brotherhood of American Yeomen*, 264 S.W. 690, 692 (Mo. 1924); 9 *Holmes' Appleman on Insurance 2d* § 57.3, pp. 382-83 (1999). But in Indiana it is a synonym for estoppel, and that is all that matters.

The plaintiff cites cases that say that a failure of prompt return of premiums waives the insurance company's right to deny coverage, whether or not the company's failure prejudiced the insured. *Farmers' Conservative Mutual Ins. Co. v. Neddo*, 40 N.E.2d 401, 405 (Ind. App. 1942); *Buehler Corp. v. Home Ins. Co.*, 495 F.2d 1211, 1213 (7th Cir. 1974) (Indiana law); *Lititz Mutual Ins. Co. v. Lengacher*, 248 F.2d 850, 854 (7th Cir. 1957) (Indiana law). The cases are inapposite. In *Neddo* and *Lilitz* the insurer would have had to cancel the policy retroactively in order to prevail, not just, as in this case (and *Buehler*, a case much like this—and decided in favor of the insurer), to deny coverage for a specific loss.

Failure to attend to the distinction between cancellation and a denial of coverage is the Achilles's heel of the plain-

tiff's argument that the continued collection of premiums barred Allstate from denying coverage for the loss caused by the fire. A denial of *coverage* is governed by estoppel (or its synonym in Indiana, "implied waiver"), and relief from the denial requires proof of prejudice in order to avoid conferring windfalls on insureds. (Besides the cases cited earlier, see *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind. App. 1993); *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 956 (7th Cir. 2004) (Indiana law).) There is no such proof in this case. *Cancellation* is governed by waiver in its conventional sense of the voluntary relinquishment of a known right.

By accepting premiums for years after learning (or being deemed to have learned, since it was properly notified, even if the notice got lost in Allstate's bureaucracy) of the change of occupancy that would have entitled it to cancel Mrs. Luster's policy, Allstate waived its right to cancel, as we said. Each check that Gikas sent and that Allstate cashed after it knew the house was unoccupied was an offer made and accepted to continue the policy in force. The right to cancel is not an exclusion of coverage for particular losses but, as we explained earlier, an option for the insurer to exercise or not as it pleases. *Aetna Ins. Co. v. Robinson*, 10 N.E.2d 601, 605 (Ind. 1937). The insurer's continuing to accept premiums after learning that circumstances entitling it to exercise its option have arisen is evidence that he's decided not to exercise it; and after a reasonable time has elapsed, the right to exercise the option (like any other contract offer) lapses, *Farmers' Conservative Mutual Ins. Co. v. Neddo*, *supra*,

40 N.E.2d at 405; *Lititz Mutual Ins. Co. v. Lengacher*, *supra*, 248 F.2d at 854. The problem for the plaintiff is that the district court's decision was based not on cancellation but on the hazard exclusion. Still, the plaintiff is entitled to a hearing on whether the exclusion applies (and Allstate to a hearing on the applicability of the vandalism exception, should the hazard exclusion be found inapplicable), and therefore the judgment is reversed and the case remanded.

REVERSED AND REMANDED.